## Highfield Co. *v.* Kirk, Appellant.

*Lease—Oil and gas leases—Partial exploration—Abandonment—*
*Bill in equity.*

1. Where the lessee under an oil and gas lease drilled one well and for a period of sixteen years thereafter failed to explore the premises further, and had no intention of drilling any additional wells, in a proceeding in equity to require the lessee to develop or abandon the premises, the court properly decreed that the defendants had abandoned their interest in the demised premises, except such curtilage as was necessary to operate the one well.

2. It is an implied condition of every lease of land for the production of oil therefrom that when the existence of oil in paying quantities is made apparent the lessee shall put down as many wells as may be reasonably necessary to secure the oil for the common advantage of both lessor and lessee.

Argued Oct. 20, 1914. Appeal, No. 87, Oct. T., 1914, from decree of C. P. Allegheny Co., July T., 1912, No. 1425, declaring abandonment of oil and gas lease in case of Highfield Company, a corporation, v. Albert E. Kirk and Walter M. Kirk. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Affirmed

Bill in equity to compel defendants to drill an oil well or to abandon a part of the premises comprised in an oil and gas lease. Before MACFARLANE, J.

The facts appear by the opinion of the Supreme Court.

The lower court entered a decree that the defendants had abandoned their right, title and interest in and to the surface of the demised premises, except so much thereof as was necessary for the operation of the one well which had been drilled. Defendants appealed.

*Error assigned,* among others, was the decree of the court.

*A. V. D. Watterson,* with him *Edward A. Kraus, Jr.,* and *Daniel C. Dillon,* for appellant.

*Alexander J. Barron,* of *McKee, Mitchell & Alter,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 11, 1915:

We agree entirely with the conclusions of the learned chancellor and with the decree which he has entered. He has correctly found and clearly stated the controlling facts in the case which warrant the relief prayed for in the bill and granted by the decree. The learned court held that the lessees had abandoned the leasehold estate except as to the well now on the premises and a reasonable space surrounding it necessary for the operation of the well. The appellants strenuously urge that the evidence did not warrant the court in finding that there was either an intention to abandon or an actual abandonment of the part of the demised premises which has not yet been operated under the lease. This is the real and controlling question in the case. The testimony of the defendants themselves and their answers to the bill conclusively show that they had, prior to the filing of the bill, abandoned the demised premises save the single well which was drilled more than sixteen years ago and is now being operated by the lessees. In the thirteenth paragraph of the bill, the plaintiff company avers that it had frequently requested the defendant to drill other wells upon the property but they had failed and neglected to do so, and they continued to hold the entire tract of forty-five acres under the lease, although they pumped the well now on the property only a few hours each week. The answer to this paragraph, filed by Albert E. Kirk, one of the defendants, is as follows: "I admit that I have been requested by complainant 'to drill other wells upon said property covered by said lease,' as set forth in the thirteenth paragraph of complainant's bill of complaint, and I aver that I am within my legal rights in declining to drill other wells on said premises, because in the judgment of myself and my co-defendant it would not be profitable to invest the sum it

would be necessary, viz: about seven thousand dollars ($7,000), to construct and drill another well on said leasehold, and I further aver that my experience has demonstrated to me that it is most advantageous to all concerned to pump said well at three intervals in each week, and at each of said intervals to pump said oil-well until the accumulation of oil is exhausted. This is the course which I and my codefendant have pursued with this leasehold, and I aver that it is the best method for us to pursue, and that it is the method followed by all experienced oil men." The other defendant filed substantially the same answer. Albert E. Kirk testified that when he heard a well on a neighboring farm was producing only half a barrel a day it "settled the drilling of any more wells on the Taylor farm with us." He also testified that the expense of another well would not justify the defendants in drilling it. The other defendant, W. M. Kirk, testified that the amount of oil which would be produced by another well would not justify the expense in putting it down, that the present way of pumping the well now on the premises, three times a week, is the only practical and advantageous way to handle it, and, in his judgment, that well takes care of the oil and will eventually get all the oil which underlies the leasehold. There was other testimony to the same effect given by the two defendants. The learned court found that the defendants averred that they had no intention of drilling any future wells upon the property, that the well already drilled by them is sufficient to draw the oil from the property covered by the lease, that the expense of drilling any additional wells would be greater than the probable production would justify, and that they have abandoned the surface of all of the premises covered by the lease, except so much as is necessary to operate the well now pumping and the pumping station used in connection therewith, both of which occupied but a small portion of said tract. From their answers, supplemented by their testimony, it clearly appears that in their judgment, by rea-

son of the small quantity of oil in the leasehold and the necessary cost of another well, the defendants have no intention of exploring the premises further than they have already done by the one well which is producing about one barrel of oil a day and is now being operated by them only three times a week. This is clearly an abandonment of the surface of the thirty-five acres of the demised premises, ten acres having heretofore been released by the lessees, outside of that part of the premises used in connection with the well which has already been drilled and is now being operated. This well, as found by the court, is being operated by the defendants, in conjunction with two other wells, both small producers, upon other premises, leased by them, by means of a pumping plant erected upon the property covered by the lease. The lease was made in 1895, one well was completed on the premises about sixteen years ago, and no further attempt has since been made by the lessees to develop the property for oil or gas purposes. This, taken in connection with the declared intention of the lessees, that the quantity of oil in the premises and the cost of drilling another well would not justify any further development of the premises, shows conclusively an abandonment of the property except such curtilage as is necessary to operate the one well.

We have no doubt of the jurisdiction of equity to afford the plaintiff company the relief prayed for in its bill and granted by the court below. The lessees do not desire to retain the premises, outside of the present well, for the purposes of development, or conduct any further operations on the land. This is not simply a difference in judgment between the lessor and the lessees as to whether the remaining part of the premises should be developed for oil or gas, or whether the expense in doing so would justify it but, as already pointed out, the lessees themselves declare that, for the reasons stated above, no further development of the property is necessary to secure the oil in the leasehold, and that they have

no intention of drilling or putting down other wells on the land. They cannot hold the premises under their lease and not develop the territory. As we have repeatedly held, it is an implied condition of every lease of land for the production of oil therefrom that when the existence of oil in paying quantities is made apparent the lessee shall put down as many wells as may be reasonably necessary to secure the oil for the common advantage of both lessor and lessee. This, the lessees say they have done, and for that reason decline to make any further expenditure in the development of the property. It is not claimed that the surface of the part of the demised premises not used in the operation of the present well is necessary or will be used by the lessees in bringing the oil in the leasehold to the surface through this well. The only effect, therefore, of permitting the lessees to continue to hold that part of the surface of the thirty-five acre tract not used in operating the well, would be to cloud the plaintiff company's title, and thereby prevent it from selling the property. We refused to permit such injustice to be done the lessor in Kleppner v. Lemon, 176 Pa. 502, and compelled the lessee to proceed with the further development of the property or to abandon that part of the leased premises which remained undeveloped. Here, the learned court below entered a decree that the defendants have abandoned their right, title and interest in and to the surface of the demised premises excepting so much thereof as is necessary for their present operations which is clearly defined in the decree. It is provided that the rights of the parties under the lease shall not be altered, modified or abridged by the decree in any manner except as to the restriction upon the defendants in the amount of the curtilage used in connection with the well now on the premises. This decree affords protection to the lessor while it secures to the lessees the oil in the leasehold with the opportunity they desired to bring it to the surface and utilize it.

The decree is affirmed, the costs to be paid by appellants.