## Remaley et al. *v.* Peoples Natural Gas Co., Appellant.

Argued March 14, 1932.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Edward M. Borger,* with him *Arthur E. Young* and *Denton Borger* and *Gaither, Portser & McConnell,* for appellant.—The supplemental agreement of April 1, 1897, does not rescind or cancel the original lease of

June 25, 1891: Venture Oil Co. v. Fretts, 152 Pa. 451; Burgan v. Oil Co., 243 Pa. 128; McCauley v. Keller, 130 Pa. 53; Grace Contracting Co. v. Ry., 259 Pa. 241.

There are no statements in the agreement of 1897 which constitute an admission by the lessee that gas is no longer being found in paying quantities on the premises so as to terminate the original lease in accordance with its terms.

Failure of the lessee to pay the money royalty on well No. 2 since April 1, 1897, does not constitute a surrender, cancellation or abandonment of the lease of 1891.

Failure of the lessee to drill additional wells on the leased premises does not constitute an abandonment or ground for forfeiture of its rights under the lease of 1891: Colgan v. Oil Co., 194 Pa. 234, 243; Young v. Oil Co., 18 S. C. 308.

Assuming that the agreement of April 1, 1897, constitutes a rescission of the lease of June 25, 1891, the rights of defendant company in well No. 2 were not limited to the well as it existed on April 1, 1897, so that the drilling deeper of the well would amount to an abandonment or justify the forfeiture of the agreement of 1897.

It is inequitable for the court to enforce a forfeiture of defendant's right in or use of well No. 2 as it existed on April 1, 1897.

Parol testimony of a conversation accompanying the execution of a written contract is not admissible to add to, vary or contradict the written instrument or show what was in the minds of the parties, the writing being unambiguous and there being no allegation of fraud, accident or mistake or of a contemporaneous parol promise made to induce the execution of the writing: Barnhart v. Riddle, 29 Pa. 92; Neville v. Kretzschmar, 271 Pa. 222; Wodock v. Robinson, 148 Pa. 503; Krueger v. Nicola, 205 Pa. 38; General Motors Truck Co. v. Paving Co., 248 Pa. 499; Ruth-Hastings Glass Tube Co. v. Slattery, 266 Pa. 288.

*Rabe F. Marsh,* with him *Rabe F. Marsh, Jr.,* for appellees.—When a lessee under an oil and gas lease admits he cannot make payments of rents or royalties, or produce gas in paying quantities, and consequently enters into a contract, which releases him from all rent or royalty, he abandons his rights under the lease.

As a matter of law the contract of 1897 supersedes and effects an abandonment, cancellation and surrender of the lease of 1891 when an inspection of both instruments and an examination of all the circumstances clearly manifest that this was intended: Carnegie Nat. Gas Co. v. Phila. Co., 158 Pa. 317; McMillin v. Titus, 222 Pa. 500; Bickford v. Cooper, 41 Pa. 2; Arnold v. Cramer, 41 Pa. Superior Ct. 8; Highfield v. Kirk, 248 Pa. 19; Cole v. Taylor, 8 Pa. Superior Ct. 19; Hall v. Haines, 43 Pa. Superior Ct. 213; Stone v. Oil Co., 188 Pa. 602.

Assuming that the lease of 1891 was not rescinded, the lessee has abandoned its rights to explore for oil or gas under the lease, except as to well No. 2, and the lease has been forfeited for abandonment by the successors in title to the lessor: Penrose v. Coal Co., 289 Pa. 519; Calhoon v. Neely, 201 Pa. 97.

Assuming that the lease of 1891 was abandoned, surrendered and cancelled in 1897, the acts of defendant company in drilling well No. 2 to a deeper sand in 1929, constituted a breach of the contract of 1897, rendering the contract null and void: Erie City v. Pub. Ser. Com., 278 Pa. 512; Gloninger v. Coal Co., 55 Pa. 9; Vulcanite Paving Co. v. Phila., 239 Pa. 524.

OPINION BY MR. JUSTICE LINN, April 11, 1932:

Plaintiffs' bill, in the nature of a bill quia timet, was filed to obtain cancellation of an oil lease dated June 25, 1891, and a later contract of April 1, 1897, by the same parties relating to the same subject, and to enjoin defendant from operating pursuant to them. A decree was made in accordance with the prayers of the bill after

hearing on bill, answer, replication and proofs; defendant has appealed.

By the oil lease of 1891, the lessor, whose rights have passed to his children, now the plaintiffs, granted to defendant the exclusive right to drill on his farm of 213 acres, inter alia, for gas, and to market the same, for "ten years......and as long thereafter as gas is found in paying quantities." If gas was "found in paying quantities in any well" and marketed, defendant agreed to pay "$200 per annum for each and every one of said wells as long as sold and marketed......semiannually in advance," the lessor to have the right to take "gas for his dwelling," free at the well. Defendant agreed to "commence operations" within one month, or to pay $1 per acre per annum quarterly in advance until work was commenced; this rental was to cease when defendant began work, "provided a second well is commenced..... within three months from the time of commencing the first," but if the second was not commenced within three months defendant should "pay the said rental on one-half of said premises until said well is commenced...... and the failure to pay said rental or commence said well within or at the time specified, shall render this lease null and void and not binding on either party except as to the one-half of said premises,......and a failure by the [defendant] to drill one well, or thereafter to make such payments at such time and place as above mentioned, shall in itself be a complete surrender, abandonment and cancellation of this lease and revest in the lessor the title of the lessee hereunder without any formal surrender or notice by lessor, and all rights or liabilities accrued or accruing shall cease and determine as fully and absolutely as if this lease had never been written......".

Shortly after the lease was made, defendant drilled two wells, known as numbers 1 and 2, No. 1 being located near lessor's dwelling house. Both wells produced gas in paying quantities until some time prior to April

1, 1897, the date of the second agreement. Prior to that date, as the chancellor found, "the gas decreased in volume so as no longer to flow in paying quantities." If the volume of gas had not ceased to flow in paying quantities, until after the end of the ten-year term, defendant might then have surrendered the lease pursuant to provision so permitting, and have been discharged from further liability on the lease, but as the failure occurred before, defendant was not in position to require the lessor to accept a surrender.

Instead of continuing to pay the rent due, and, in order to avoid suffering default under the lease, defendant and the lessor made the agreement of April 1, 1897. This agreement recited that defendant represented to the lessor (who accepted the representation as a fact) that the "pressure and volume of gas in said wells have been so decreased, as, in the opinion of the said company, no longer to justify said company to continue paying for the same." Accordingly, by this agreement, the lessor released defendant "from all rent, royalty, claim or charge for said well No. 2, and for the gas from the same, in consideration whereof the said gas company does give and grant to the said Anthony Remaley, his heirs and assigns, all the right, title and interest of the said gas well No. 1 and the gas therefrom together with the casing in said well No. 1."

Between 1891, when the two wells were put down, and January, 1929, defendant drilled no additional well and made no further exploration, and after making the agreement of April 1, 1897, paid no rent or royalty. During that interval there were periods when the pressure and volume of gas in well No. 1, were so low that the lessor, and, later, the plaintiffs claiming under him, were unable to get enough for their household use. During the same interval, though defendant at times extracted gas from well No. 2, there were long periods when none was obtained. For a while, the casing of this well wanted repair and quantities of water collected in it. With the

well in this useless condition, defendant in the fall of 1928, withdrew the defective casing and put in a new one, pumped out the water, and in January, 1929, drilled the well from the Murrysville sand which had contained the gas (depth 1,440 feet), to another sand, designated in the evidence as the Hundred Foot sand, 60 feet deeper, with the result that the rock pressure, theretofore varying from three to four pounds, was increased to over six hundred pounds, and with an enormous increase in gas production. Before this well was deepened, plaintiffs protested to defendant and denied its right to do as proposed.

Plaintiffs contend that the second agreement rescinded the original lease, and left each party with an existing well, and limited defendant's right to take such gas only as could be extracted from well No. 2 at the depth at which it had been operated when the agreement was made, or, in the words of the agreement, "said gas well No. 2 and for the gas from the same"; that both parties for over thirty years thereafter acted on that interpretation, until, in 1929, defendant, by boring to a deeper sand, asserted rights under the original lease; that the assertion of this alleged right which it no longer possessed under the lease, constituted a cloud on plaintiffs' title and interfered with the sale and use of their property requiring the intervention of equity on familiar principles. See Heller v. Fishman, 278 Pa. 328, and cases cited in that opinion. Plaintiffs also contend that defendant had abandoned the rights conferred by the second agreement and has become a trespasser, committing irreparable injury, also justifying the decree made.

Defendant contends that the original lease is still in force, except as modified by the second agreement, and that it has the right to extract all the gas in the farm, and that, by the second agreement, it may extract all that will flow from well No. 2 without payment; that its surrender to the lessor in 1897 of gas well No. 1 was

final payment for all the gas that can ever be extracted through well No. 2.

In support of plaintiffs' position that the contract of 1897 was intended to rescind the lease, one of them testified (and there was no contradiction of this evidence) that when defendant's agent presented the document to lessor for his signature, "he [the lessor] said he didn't like to sign it until he [defendant's agent who conducted the negotiation] sent the old lease [1891] back. He [defendant's agent] said 'Go ahead and sign it and I will mail your old lease back.' Father trusted to his honesty, but he never did." Appellant complains that this evidence was received against its objection that it was "in violation of the parol evidence rule." The evidence was properly received. The bill averred that defendant "fraudulently asserted that it holds the said oil and gas lease upon said farm......"; this averment was admitted in the answer with the denial that such title was "fraudulently" claimed. Defendant also admitted that the "recording of said lease agreement and the existence of said 1897 agreement and the claim of title thereunder by this defendant has prevented and will prevent the plaintiffs from making sale of leases of said oil or gas which is of great value......" It was therefore relevant and important to show, if it was the fact, that the agreement of 1897 was executed in rescission of and substitution for the lease of 1891; in part, the fact is shown by a reading of the paper in the light of the circumstances disclosed by the evidence; it finds additional support in the statement of the witness that an inducement to its execution was the promise of defendant's agent that he would return the original lease to the lessor, if he would sign the second agreement. To permit the defendant to stand on both papers, when one of them was obtained on defendant's promise to surrender the other, would defraud the plaintiffs. Such evidence is received to prevent the fraudulent use of the writing: Excelsior Saving Fund, etc., v. Fox, 253 Pa. 257, 259.

What, then, is the scope and meaning of the second agreement? To aid in determining that, we may place ourselves in the position of the parties when it was made and consider the circumstances of the transaction. Defendant had two wells, drilled in 1891 pursuant to the lease; it was paying $400 a year for them, and was obliged to pay that sum for the balance of the term, and as much longer as gas was produced in paying quantities and marketed. The rock pressure and volume of the gas had so diminished that gas could not be produced in paying quantities, at the price defendant had agreed to pay (see Young v. Oil Co., 194 Pa. 250). The lessor was not bound to reduce the rent to enable defendant to make the wells pay. Defendant wished to be relieved from paying what it had agreed to pay. Accordingly, the parties met, the defendant acting by an agent of admitted authority. He produced for the lessor's signature the document of April 1, 1897, containing terms which, we must assume, had previously been agreed to. This document was essentially different from the original lease and provided for essentially different conditions. One of the new conditions was that defendant was relieved of liability for the sum of $400 a year for which it was liable for several years to come; plaintiffs were to have the continued use of well No. 1. The rights and liabilities created by the lease of 1891 were superseded because defendant in substance represented that without sustaining loss it could no longer perform the consideration it had agreed to perform in order to maintain its rights under the original lease. It was because it could not afford to perform, that it desired to be released, and the problem of the negotiation was to state the terms of an agreement that both parties would substitute for the original lease. As also indicating that a substitution was contemplated, when defendant's agent presented the document for execution, the lessor wished to postpone signing it until defendant surrendered the original lease to him, perhaps erroneously thinking that

possession of the paper was essential to discharge the contract. He was nevertheless pursuaded to sign the substituted contract on the promise of defendant's agent that the original lease would be sent to him. This conclusion also finds support in the condition of well No. 1; the evidence is that the gas which the lessor was able to take from that well was so meager in quantity on account of low pressure and small volume, as even to be inadequate for heating his dwelling house. Our consideration of what the parties stated in the agreement, in the light of the circumstances in which it was made, leads us to agree with the court below that the agreement can have been intended only as a complete substitute for the original lease.

Appellant also contends that, in any view, the relief granted is too broad, that defendant should be permitted to remain and to pay for the gas taken from the lower sand, even though such right is held not to have been within the contemplation of the parties when the agreement of 1897 was made; or, in the alternative, that it should be permitted to resume its right to take from well No. 2, as it did prior to the deepening of the well. The difficulty with these positions is, that, from the evidence which has already been referred to briefly, the learned court below concluded that defendant abandoned such rights as it had under the agreement of 1897 in "said well No. 2," when it deepened it to another gas-producing sand. The well was drilled deeper, not by accident, but pursuant to specific written instructions from the defendant to its authorized employees engaged in repairing the defective casing in the well; it was intentionally done, after receiving plaintiffs' protests against it. The evidence supports the finding of the chancellor, approved by the court in banc, that defendant abandoned the well as granted in 1897. See Cole v. Taylor, 8 Pa. Superior Ct. 19; Venture Oil Co. v. Fretts, 152 Pa. 451; Calhoon v. Neely, 201 Pa. 97; Highfield Co. v. Kirk, 248 Pa. 19, 22; McMillin v. Titus, 222 Pa.

500, 511; Bartley v. Phillips, 179 Pa. 175; Kleppner v. Lemon, 176 Pa. 502.

There is no doubt of the jurisdiction to enjoin on the ground that the threatened damage is irreparable, or incapable of measurement at law (Westmoreland N. Gas Co. v. DeWitt, 130 Pa. 235, 251), or to prevent continuing trespass (Kramer v. Slattery, 260 Pa. 234, 241).

The decree is affirmed at the costs of defendant.