Trans-Fuel, Inc. *v.* Saylor et ux., Appellants.

Argued April 30, 1970.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Donald A. Semisch,* for appellants.

*Harry C. Barbin,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 9, 1970:

The question in this matter is whether a lease for a service station from the appellants to the appellee fuel company (as lessee) and the leaseback from the appellee to the appellants are severable or are so interdependent that the rescission of one amounts to a surrender of rights under the other.

The following statement of facts is contained in the opinion of the court below:

"In 1959, the defendants, Thomas Saylor, and his wife, Diane, were the owners of a piece of vacant ground at Easton Road and Columbia Avenue, Horsham Township, which they wanted to develop as a gasoline service station.   In order to obtain and provide control over the operation of a retail outlet for the gasoline and oil which it sells, plaintiff, Trans-Fuel, Inc., loaned the Saylors $15,500 interest free and entered into three agreements with them: (1) The Say-

lors leased the property to Trans-Fuel for the term of ten years at a monthly rental of $200; (2) Trans-Fuel then leased the station back to the Saylors at the same rental for ten years; and (3) The Saylors agreed to buy and Trans-Fuel agreed to sell all the gasoline and oil required for the operation of the station. This document is referred to as a 'sales agreement.'

"The Saylors operated the station for almost a year, and then sublet it to four other persons consecutively, all of whom entered into sales agreements with Trans-Fuel for the purchase of gasoline and oil.

"At the end of 1963, the Saylors wanted to make extensive improvements to the property. With the help of Trans-Fuel, the Saylors secured a $30,000 loan, and a three-bay station was constructed. On May 1, 1964, two agreements were entered into by the parties: (1) The Saylors leased the property to Trans-Fuel for the term of ten years at a monthly rental of $350 (this will hereafter be referred to as the 'lease'); (2) Trans-Fuel then leased the station back to the Saylors at the same rental for ten years, (this will hereafter be referred to as the 'lease-back'). Although a sales agreement was prepared, it was never executed. Aside from that, the 1960 and 1964 agreements were substantially the same as to form.

"In July, 1965, a dispute developed between the parties as to whether Trans-Fuel intended to forgive a balance of $8900 due on the original $15,500 loan at the time the new leases were executed. The Saylors advised Trans-Fuel that they would obtain a new source of supply for gasoline and oil unless Trans-Fuel terminated the judgments which had been previously entered against the Saylors to secure the original loan. This court by the Honorable David E. Groshens, P. J., on December 28, 1966, held that the judgments should be marked satisfied.

"The station had been sublet by the Saylors until September 30, 1965, when they resumed operating it themselves. From that date until October 12, 1965, Trans-Fuel neither sold nor delivered any gasoline to the Saylors. Gasoline had been requested by the Saylors but Trans-Fuel refused to deliver unless a sales agreement was signed and unless the litigation involving the forgiveness of the original loan was terminated. The Saylors refused to do either.

"In October of 1965, the Saylors entered into a transaction with Gulf Oil Corporation, as a result of which Gulf removed Trans-Fuel's sign, gasoline pumps and lights from the station and replaced them with Gulf equipment. On October 10, 1965, Trans-Fuel filed an Amicable Action and Confession of Judgment for Ejectment (Case No. 65-12627) alleging that the alterations to the station were in direct violation of the 1964 lease. The Saylors filed a petition to Open Judgment and this court on February 23, 1966, permitted the Saylors to let in a defense.

"On October 13, 1965, the Saylors informed Trans-Fuel that they were terminating their lease with the plaintiff.

"On April 11, 1966, Trans-Fuel informed the Saylors that it was electing to terminate the lease-back to the defendants in accordance with one of its provisions permitting plaintiff to do so on any anniversary date.

"On June 10, 1966, Trans-Fuel filed the second Amicable Action and Confession of Judgment for Ejectment (Case No. 66-6946) alleging that it was entitled to possession of the station since the term of the lease-back to the Saylors had terminated. This Court again permitted the Saylors to let in a defense and consolidated both cases for trial."

A trial was held and on September 12, 1968, the jury returned a general verdict for the appellants in

both cases. Thereafter, appellee, by its attorney, filed a motion for a new trial and a motion for judgment n.o.v. These matters came before the court en banc in March of 1969, and in an opinion dated December 2, 1969, the court entered judgment n.o.v. in favor of the appellee in Case No. 66-6946, although it refused the motions for a new trial and for judgment n.o.v. in Case No. 65-12627. This appeal followed.

In seeking to uphold the jury's verdict, the appellants contend that, reading the testimony in the light most favorable to them as verdict winners, the evidence showed a scheme by appellee to gain control of appellants' property by refusing to deliver gas and threatening forfeiture. Appellants take the position that these actions by the appellee rendered the operation of a gasoline service station under the leaseback impossible, since the signs had to be changed in violation of the leaseback in order to obtain gas from another source, and that, therefore, the appellants properly declared the mutual leases to be void, and appellee had no right to possession of the property.

As further support for their contention, appellants emphasize the fact that the jury's decision in Case No. 65-12627 was upheld by the court en banc, which reasoned as follows: ". . . [I]n a special finding, the jury determined that the plaintiff would have only sold gasoline to the Saylors on terms acceptable to it. Since plaintiff's gasoline was not being sold at the service station and since plaintiff refused to supply gasoline unless its stipulations were met, the defendants were justified in removing plaintiff's signs. The evidence adduced at trial in this respect was sufficient to sustain the verdict of the jury."

However, an examination of the lease and leaseback in question indicates that the decisions of the court en banc to affirm the verdict in No. 65-12627 but grant

judgment n.o.v. in No. 66-6946 are not inconsistent. Moreover, we are convinced the court reached the correct result.

In case No. 65-12627, the appellee sought to cancel the lease in the middle of the year because the appellants attempted to remove the signs. The jury and the court en banc were correct in refusing to allow it to do so. However, the leaseback also provides that it could be terminated by either party at the end of the first year or any subsequent year. It was this right which the court en banc upheld by granting judgment n.o.v. in No. 66-6946.

The basic lease under which appellants as lessors leased the premises to the appellee as lessee contains no such provision. Instead, under the basic lease, only the appellee has the power to terminate at the end of the first year or any subsequent year. Thus, the two leases taken together clearly foresaw the situation where appellee could cancel the leaseback but the basic lease would remain in existence. To say that the leases were completely dependent upon one another would be to make this provision nugatory.

The appellants emphasize Paragraph 16 of the leaseback in their attempt to show that the leases were completely dependent upon each other. Paragraph 16 reads as follows: "This lease is subject to the terms and conditions of the lease, if any, between lessor and the owner or tenant of the demised premises. . . ."

However, the appellants can point to no term or condition in the basic lease which would prevent the appellee from terminating the leaseback while maintaining its rights under the basic lease. The lease does not require appellee to lease the premises back to appellants. The lease does not require the appellee to supply the station with gasoline. In the past, it is true, this obligation was created by a separate sales agree-

ment. However, it is undisputed that no such agree-
ment was executed with the 1964 leases.

In summary, we think the lease and the leaseback
are clear on their faces. The leaseback allows either
party to terminate at the end of any term year. When
a case rests entirely upon uncontradicted documentary
evidence with no reliance on oral testimony, binding
instructions and judgment n.o.v. are in order. See *Cof-
fin v. Fidelity-Phila. Tr. Co.*, 374 Pa. 378, 97 A. 2d 857
(1953).

Appellants contend that the power of attorney to
confess judgment on the leaseback was exhausted after
it had been once exercised. However, we find that the
leaseback agreement between the parties specifically
authorized appellee to commence more than one amica-
ble action in ejectment. Moreover, the issue of the ex-
haustion of a power of attorney to confess judgment
on a lease cannot be considered on appeal since it was
not raised in the court below.

Appellants also contend that the termination pro-
vision of the leaseback should not be enforced because
the contract should be deemed to be oppressive and un-
conscionable. We do not agree. A bad bargain is not
a basis for rescission. Moreover, the appellants re-
ceived substantial consideration for the 1964 leases.
Not only was the monthly rental increased from $200
to $350, but a debt of $8,900 due the appellee from the
appellants was forgiven.

We hold that judgment n.o.v. was properly entered
by the court en banc in this case. Appellee, as a mat-
ter of law, was entitled to terminate the leaseback with
appellants but keep the leased premises under its lease
with appellants.

Judgment affirmed.