## Trustees of First Presbyterian Church v.
## Oliver Tyrone Corp.

*Frank L. Seamans*, for plaintiff.
*David B. Fawcett, Jr.*, for defendant.

FINKELHOR, *J.*, October 25, 1974—This is an action in equity by the Trustees of the First Presbyterian Church of Pittsburgh, plaintiff (hereinafter called "church") against Oliver Tyrone Corporation, defendant (hereinafter called "Oliver Tyrone"), to declare void or to reform a 999-year ground lease in connection with a tract of land located along Wood Street in the downtown section of the City of Pittsburgh and which is presently occupied by a building owned by Northwestern Mutual Life Insurance Company known as 300 Sixth Avenue. This case was designated a complex case by order of court dated October 19, 1973.

Defendant filed preliminary objections in the nature of a demurrer and motions to strike and for a more specific pleading. Plaintiff filed preliminary objections to defendant's preliminary objections. These matters are presently before the court.

It is well established that a demurrer admits as true all facts which are well and clearly pleaded but not the pleader's conclusions or averments of law: Landerman v. Churchill Area School District, 414 Pa. 530, 200 A. 2d 867 (1964); Stahl v. First Pennsylvania Bank and Trust Company, 411 Pa. 121, 191 A. 2d 386 (1963); Bogash v. Elkins, 405 Pa. 437, 176 A. 2d 677 (1962); Silver v. Korr, 392 Pa. 26, 139 A. 2d 552 (1958).

In their earnest advocacy of their respective posi-

tions, both parties have included factual allegations within their briefs that are not facts of record. In ruling on defendant's demurrer, the court cannot consider additional facts which should properly be raised in an answer to the proceedings: 1 Goodrich-Amram, §1017(b)(11), page 92; Linda Coal and Supply Company v. Tasa Coal Company, 416 Pa. 97, 204 A. 2d 451 (1964); Detweiler v. Hatfield Borough School District, 376 Pa. 555, 104 A. 2d 110 (1954). Defendant, in support of a demurrer, cannot by brief aver, nor can a court consider, the existence of facts not of record: Brennan v. Smith, 6 Pa. Commonwealth Ct. 342, 299 A. 2d 683 (1972).

Therefore, in ruling upon defendant's demurrer, the court will only consider those facts which have been set forth in the complaint and prior orders of this court.

## STATEMENT OF FACTS

The plaintiff church, which was organized in 1787, is the owner of the tract of land located on Sixth Avenue in the Second Ward of the City of Pittsburgh. Between the years 1787 and 1902, the church occupied the leased premises and maintained thereon a meeting house and chapel for the purposes of religious worship. In 1901, the church, interested in replacing the chapel, began negotiations with Henry W. Oliver ("Oliver"), a prominent early Pittsburgh business executive, who, first, offered to purchase a portion of the church property for $600,000 and to lease another portion for a term of 999 years.

For reasons now unknown to plaintiff, this plan was abandoned by the parties and replaced by a lease agreement for a term of 999 years. A copy of

the lease is attached to plaintiff's complaint for a term from the year 1902 A. D. to the year 2901 A. D.

Upon delivery of the 1902 lease, Oliver paid $150,000 to the church as hand money and the annual rental for the land was fixed at $30,000 per annum. In addition, under the agreement Oliver was to pay all of the taxes and assessments on the property and to construct a building on the leased premises. Upon the termination of the lease, the building was to return to the church. Plaintiff further alleges that it was the intent of Oliver and the church that the annual rental would constitute a "fair return"[1] to the church and would forever solve the financial problems of the church.

This 1902 lease was approved at a meeting of the congregation of the church but not approved by the Presbytery nor any higher church body nor were any of the subsequent modifications to the agreement submitted to any higher ecclesiastical body for approval.

Under the then existing requirements of the Price Act of 1853,[2] a petition for approval of the lease was submitted to the Court of Common Pleas of Allegheny County at August term, 1902, no. 563. All subsequent modifications were also submitted by plaintiff and approved by the Common Pleas Court.

Henry Oliver died on February 8, 1904, and his interest under the 1902 lease passed by subsequent

1. The concept of "fair return" is based on the letter from Oliver to church dated January 8, 1902, and Exhibit B to the complaint.

2. Act of April 18, 1853, P.L. 503 (No. 304). This act was repealed June 17, 1917, replaced by the Revised Price Act of 1917, P.L. 388, as amended, 20 P.S. §§1561, et seq., and now replaced by the Probate, Estates and Fiduciaries Code of June 30, 1972, (No. 164), et seq. See in re Evangelical Church, 147 Pa. Superior Ct. 340 (1942).

testamentary and other transfers to defendant, Oliver Tyrone Corporation, a Pennsylvania corporation, and the present defendant in these proceedings.

The first building was erected on the premises, prior to Oliver's death in 1904, and was subsequently occupied by McCreery Company, a retail department store, as subtenant. The agreed rental of $30,000 per annum was paid under the terms of the lease.

## The Modifications

In 1940, due to the economic decline of that period, the building became vacant and substantial renovation, estimated at $1,000,000, was required to secure the new subtenant, Spear and Company. Fearing a loss of the lease, plaintiff agreed with Pittsburgh Business Properties (a predecessor in defendant's chain of title) to modify the lease as follows: (1) to reduce the $30,000 annual rental in four steps to $15,000 for the year 1943 but with a provision for a percentage of the net sales of the subtenant in excess of $6,000,000; (2) an increase in the size of the leased premises and the elimination of certain building restrictions, and (3) a provision that defendant could cancel the lease upon 60 days notice effective at the end of any calendar year.

Plaintiff alleges that no accounting was received on the sales of subtenant and that payments were not made on the percentage of sales.

The 1940 amendment was approved at a meeting of the congregation of the church and by the Court

of Common Pleas of Allegheny County at October term, 1940, no. 1106.[3]

In 1951, after a new sublease between Pittsburgh Business Properties ("PBP") and the subtenant ("Spear") for 21 years, the church and PBP amended the ground lease to increase the annual rental to the church to $40,000 per year for 1952 through 1955, inclusive, and to $45,000 per year for the period 1956 through 1972. PBP further agreed not to cancel the 1902 lease or the 1951 amendment during the term of the Spear sublease of the property. This 1951 agreement was also approved by the congregation and the Common Pleas Court at January term, 1952, no. 3003.

In 1954, further amendments were negotiated to eliminate certain building restrictions and in a tripartite agreement dated February 1, 1954 among the church, PBP and Spear, the parties provided that Spear was to be given the opportunity to cure any default of defendant under the 1902 lease. This amendment was not submitted to the congregation of the church or the Common Pleas Court.

Oliver Tyrone,[4] the present defendant, on November 1, 1961, conveyed the building, previously known as the McCreery Building and the Spear Building and located on the church property, to Northwestern Mutual Life Insurance Company ("Northwestern") and simultaneously took a lease

3. Plaintiff argues in its brief that the Act of June 20, 1935, P.L. 353, sec. 1, 10 P.S. §81, removed the requirement that the disposition of church properties be approved by the Common Pleas Court and thereby rendered any court order a nullity.

4. The date when Oliver Tyrone, defendant, took possession of the lease from Pittsburgh Business Properties is not set forth in the complaint.

back for a term of 20 years (1981) with five renewal terms of ten years (2031), each from Northwestern. The rental of the building was fixed at $275,000 for the first five years, with a sliding decrease to a rental of $87,500 for the fifth renewal period. This building was conveyed for a consideration of $2,500,000.

In the event of the cancellation of the lease-back or at the end of the fifth renewal period, Northwestern was given the option to purchase Oliver Tyrone's interest under the 1902 ground lease with plaintiff for $400,000 or of leasing the interest until the expiration of the 1902 lease with the church.

Northwestern has not been made a party to this litigation.

As of January 1, 1973, pursuant to the 1951 amendment, the annual rental for the ground lease dropped from $45,000 to $30,000 per annum and since Spear is no longer the subtenant, the right of defendant to cancel the lease upon 60 days written notice was revived.

Plaintiff further alleges that the assessed value of the land for tax purposes is $879,230, the building is separately assessed at $950,000 and that the current market value of the unimproved land is $2,500,000.

## Plaintiff's Position

Based upon the above facts, plaintiff's prayer for relief requests that the lease be (1) nullified, or (2) reformed on the following legal theories:

1. A 999-year lease per se is null and void against public policy (Count One).

2. Due to mutual mistakes at the time of inception and the subsequent conduct of the parties the

lease must be reformed to provide a "fair rental" (Counts Two and Three).

3. Due to the "unconscionability" of the 1940 amendment, the lease is void (Count Four).

4. Absent any other legal theory, plaintiff is entitled to relief under article I, sec. 11, of the Pennsylvania Constitution (Count Five).

5. The initial lease and the subsequent amendments were never approved by the higher church authorities and is, therefore, invalid (Count Six).

## *Defendant's Preliminary Objections*

It is defendant's position that plaintiff is barred from relief either to nullify or modify the 1902 lease by laches, the statute of limitations and equitable estoppel or res adjudicata resulting from petitions filed by plaintiff under the Price Act, supra, and decrees of the Common Pleas Court, approving the lease and amendments, and that the complaint, alleging the illegality of a 999-year lease, as a matter of law, fails to state a cause of action. Defendant, further, alleges that the complaint contains impertinent and scandalous matter, is unduly prolix and fails to conform to the Rules of Civil Procedure (motions to strike and for a more specific pleading) and that plaintiff has failed to join a necessary party to this action.

Plaintiff has filed preliminary objections to defendant's preliminary objections.

## THE ISSUES

After a careful reading of the long, erudite, prolix and complex briefs submitted by the parties, in the judgment of the court the central issues to determine the validity of the complaint and preliminary objections may be more briefly restated as follows:

1. Is the lease negotiated in 1902 between the church and Henry Oliver for a 999-year term void or voidable per se as against public policy, unjust enrichment or mutual mistake of fact? *Answer:* No.

2. If said lease has been defective at its inception or by subsequent modifications, has plaintiff lost the right to void said lease by three separate Price Act petitions in which said lease was approved by the court and by accepting the rentals under the lease for more than 70 years? *Answer:* Yes.

3. Accepting plaintiff's facts, as stated, has plaintiff stated a cause of action based on the subsequent conduct of the parties to modify or rescind the "fixed rental" or other provisions of the 1902 lease? *Answer:* Yes.

4. Does the complaint, as stated, comply with the Rules of Civil Procedure?

## ARGUMENT

### *The 999-Year Lease (Counts One and Five)*

The threshold issue in these proceedings is whether plaintiff's allegations of the illegality of a 999-year lease, negotiated in 1902, states a legal cause of action. Plaintiff's claim is *first* one of general public policy against unjust enrichment, incipient in the very nature of a long-term ground lease, and *second* that it was the intent of Oliver and the church to provide the church with a "reasonable return" and that under current economic conditions the $30,000 annual rental is in fact a "mutual mistake" or a fundamental ambiguity in the agreement.

Plaintiff has not cited, nor has the court found, a single case or treatise to support this position. On the contrary, both case law and the academic

commentary suggest that long-term ground leases which are rooted in the English common law are not only valid instruments but, on occasion, efficient devices for the achievement of certain financial goals.

Long-term ground leases were used in Pennsylvania in the early Colonial period. In addition, the ground rent, based upon a conveyance in simple fee which reserved to the landlord and his heirs an annual return payable in perpetuity, was also a recognized form of landholding. These estates continued into the twentieth century to provide (1) a long-term return to the landowner, and (2) control by the owner-landlord over the property: 2 Powell on Real Property, §242(1).

As described by McGary & Wade, The Law of Real Property (Stephens & Sons Ltd., London 1957):

"Leases on anything up to 999 years, or even more, are sometimes granted for similar purposes; here the reversion is too remote to have any value, but the advantage to the landlord is that he can control the use of the land by means of covenants in the lease, and a greater variety of covenants are enforceable under a lease than under an outright conveyance of the fee simple.": page 568.

As noted in The Long Term Ground Lease: A Survey, 48 Yale Law Journal 1400 (1939), with the commercial expansion at the turn of the century "a general wave of ground leases began to sweep the country.":

"Obviously, there is an economic minimum to the duration of a ground lease term, since the assumption of the leasehold obligation could not be undertaken unless a fairly long period within which to realize upon the investment were granted. The

practice in individual communities varies. In Detroit, leases of ninety-nine years of the non-renewable type are the predominant vogue. . . . *On the other hand, there is no maximum, in the absence of statute, to the number of years leases may last* . . . Under English Law of Property Acts of 1922 and 1925, §§145, 202, perpetually renewable leases then in existence or thereafter to take effect were converted into 2000 year terms." Id. at page 1402. (Emphasis supplied.)

Unless a statute limits the term of a ground lease, there would be no legal barrier to leasing agreements of any duration.

While Pennsylvania law prohibits irredeemable "ground rents" (a deed which provides for the payment of rental) there is no legislation regulating, prohibiting or limiting ground leases. In fact, the validity of long-term leases in general, and the lease, now at issue, in particular, is specifically outlined as a valid instrument in Hawkins, Notes on Real Estate in Western Pennsylvania (the bible for real property students for a generation) in section 109:

"A lease if in writing may be for a hundred or a thousand years and have the same effect and legal consequences as a lease for five years: * * * the Carnegie Building and the McCreery Building (Deed Book 1318, p. 357) are occupied on long-term leases of 999 years."

In Appeal of the Trustees of Protectors' School Fund of Providence, 2 Walker 37 (1884), the Pennsylvania Supreme Court upheld a 999-year ground lease for a fixed rent made by trustees of a worthy charity. Answering the argument that the trustees were without authority to make such a

lease, the court found that the Price Act, supra, was intended to give trustees such broad powers:

"[B]y the act of 1831, leases for long term of years and even sales of a 'great part of said lots were recognized and intended to be confirmed, and future leases and sales of the land were expressly authorized'." Id. at page 57.

The Providence School Fund decision requires careful reading as the facts are analogous to the instant proceeding. The case was assigned to a master who upheld the 999-year lease; approved by the Common Pleas Court, and affirmed by the Pennsylvania Supreme Court.

The master stated, at pages 43 and 44 of the reported opinion:

"While inadequacy of price, improvidence, surprise and mere hardship, have each been held sufficient to refuse specific performance, yet not one of these nor all combined furnish adequate reasons for judicial recision of a contract. For such action it is declared that *nothing but fraud or palpable mistake* affords sufficient grounds." (Emphasis supplied.)

While plaintiff has alleged in paragraphs 54 and 55 of the complaint that the lease is "unequitable and unfair" and in paragraph 57 "mutual mistake of fact," the elements of "palpable mistake" and/or "fraud" are not set forth in plaintiff's cause of action. A careful study of the supporting documents including the letter from Henry Oliver to the church committee, refute the elements of misrepresentation, required to establish fraudulent dealings. Rather, in the same manner as the trustees in the Providence School Fund case, plaintiff is alleging

unjust enrichment or inequities due to changes in the value of the property.

In Providence, the master found "that the lease is not invalid as being for any unreasonable term at a stationary rent . . . In the light of the present state of affairs, of course this rent seems insignificant, but looked at as things were in 1796, the aspect is different.": supra, page 45.

The rent in Providence, supra, was in the amount of $3 for valuable coal land. In fact, the master sorrowed over the insignificant return from the property as compared with its "present" value and what magnificent results could have been accomplished for the education of the youth of Scranton if the returns from the property could be applied to the purposes intended by the donor.

This is precisely the argument that is being raised by plaintiff in the instant case. The return from the church lease, judged by today's values, may be as inadequate as the $3 per annum lease negotiated in 1796 by the Providence School Trustees, but mere inadequacy of return does not support the rescission of an otherwise valid agreement.

Moreover, while in the Providence case at the conclusion of the lease the charity would receive a land depleted of valuable coal deposits, in the instant case the property could return to plaintiff enhanced by a valuable structure.

In Effinger v. Lewis, 32 Pa. 367 (1859), the Pennsylvania Supreme Court approved a 100-year lease with *perpetual* right of renewal, at the same rental, by the lessees and stated, at page 370:

"There is now, and was when this lease was made, nothing to prevent a perpetual lease of land without livery, or a lease that may become perpetual at the pleasure of the lessee . . ."

Probably the most cogent argument against plaintiff's position that the instant lease is a violation against public policy is the Pennsylvania legislation prohibiting irredeemable ground rents—first enacted in 1850. See Act of April 22, 1850, P.L. 554, sec. 21, 68 P.S. §§162, et seq.

While a ground lease is distinguishable from a ground rent, both were valid in common law. The Pennsylvania Legislature specifically extinguished the irredeemable ground rents, but similar legislative action was not taken to limit ground leases.

It appears to the court that throughout the years the Pennsylvania Legislature has considered and revoked various common law estates and interests in land and that it is beyond the power of the court to invalidate these interests absent similar legislative action. While plaintiff emphasizes the changing character of American jurisprudence and the emergence of new rights and responsibilities by judicial decision as in McPherson v. Buick, 217 N.Y. 382, 111 N.E. 1050 (1916), and Ayala v. Phila. Board of Public Education, 453 Pa. 584, 305 A. 2d 877 (1973), these decisions did not nullify existing contractual obligations. See Article I, sec. 10, Constitution of the United States.

Count 5 of the complaint is grounded on Article I, sec. 11,[5] of the Pennsylvania Constitution paraphrased to state "where there is a right, there is a

---

5. All courts shall be open; and every man for an injury done him in his land, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct: Article I, sec. 11.

remedy." But, it is incumbent on the litigant to establish the right to the remedy.

None of us are prophets, even Nostradamus. Certainly, Henry Oliver and the Church Trustees in 1902 could not have foreseen the chaotic world of 1974 but this fact, alone, does not nullify an otherwise legal agreement.

As stated in the simple horn book language of 8 P. L. Encyc. 113, Contracts, §103:

"Contracts contrary to public policy, that is, those which tend to be injurious to the public or against the public good, are illegal and void. However, only in clear cases should a contract be declared illegal as a violation of public policy. It is only when a given policy is so obviously against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regards to it, that a court may constitute itself the voice of the community in declaring such policy void."

Plaintiff has failed to establish such public injury.

## Res Adjudicata, Equitable Estoppel, Laches and the Statute of Limitations

It is the crux of defendant's position that plaintiff has been guilty of the grossest laches in applying to this court to rewrite a transaction entered into 71 years ago, particularly in view of the mesne assignments and transfers, of which plaintiff had notice and affirmatively approved or in which it acquiesced, with the results that improvements on the property are now owned by Northwestern Mutual Life Insurance Company (not a named party defendant) and that the existing structure on the property is erected not only on Church land but

on land owned by defendant. It is defendant's further position that having sought and obtained the approval of the Common Pleas Court on at least three occasions to enter into the lease and the subsequent amendments, plaintiff is now estopped from attacking the validity of the lease, either for purposes of finding the lease to be null and void or for purposes of modification. To sustain these arguments, defendant has attached to its motion both the petitions of plaintiff and the decrees of court, approving the 1902 lease and the subsequent amendments, as being "for the interest and advantage of said petitioner and of the Trustees and Church and congregation of the First Presbyterian Church of Pittsburgh." (August term, 1902, no. 563, Exhibit A to defendant's preliminary objections.)

In support of its position that irrespective of the legal sufficiency of plaintiff's various theories of relief plaintiff is barred by the passage of time, defendant argues (1) equitable estoppel and res adjudicata, (2) laches, and (3) the statute of limitations. While each of these theories has a different legal base, the essence of the argument is that 71 years delay, specific court approval, acceptance of the benefits and the change in position of the parties requires the dismissal of the complaint.

A decree of approval by the Orphans' Court under the Price Act, supra, in the absence of fraud is conclusive upon the Common Pleas Court and the parties and cannot be attacked in a collateral proceeding: Mercer Home for Disabled Clergymen v. Fisher, 162 Pa. 239, 29 Atl. 733 (1894); Myers v. Crick, 271 Pa. 399, 114 Atl. 255 (1921). Res adjudicata may be raised by demurrer where the complaint sets forth the facts and issues pleaded in

a prior case: Kiely v. J. A. Cunningham Equipment Company, 387 Pa. 598, 128 A. 2d 759 (1957); Shotkin v. Presbyterian Church Board of Pensions, 343 Pa. 650, 23 A. 2d 419 (1942).

The equitable doctrine of laches is an estoppel based on prejudicial delay (Thompson v. Curwensville Water Company, 400 Pa. 380, 162 A. 2d 198 (1960)), and is normally determined only after the court has had an opportunity to appraise the evidence and to determine whether a valid cause exists for delay in bringing suit: Rush v. Butler Fair and Agricultural Association, 391 Pa. 181, 186, 137 A. 2d 245 (1958); Gabster v. Mesaros, 442 Pa. 116, 220 A. 2d 639 (1966). The question of its application does not depend upon the fact that a certain definite period of time has elapsed since the cause of action accrued but rather whether, under the circumstances of a particular case, the complaining party or parties are chargeable with want of due diligence in failing to institute or prosecute their cause. The defense of laches may only be raised on preliminary objections where the laches is apparent on the face of the complaint: Holiday Lounge, Inc. v. Shaler Enterprises Corp., 441 Pa. 201, 272 A. 2d 175 (1971); Stahl v. First Pennsylvania Bank and Trust Company, 411 Pa. 121, 191 A. 2d 386 (1963); Silver v. Korr, 392 Pa. 26, 139 A. 2d 552 (1958).

Pa.R.C.P. 1017(b)(4) places a similar limitation on preliminary objections which allege the statute of limitations and the statute provides a preliminary bar against plaintiff's cause of action only if (1) it cannot be waived by defendant, (2) it destroys plaintiff's right of action, and (3) it appears on the face of plaintiff's complaint: Ziemba v. Hagerty, 436 Pa. 179, 259 A. 2d 876 (1969).

The effect of the above legal and equitable principles apply differently to the various counts of plaintiff's complaint.

Plaintiff has accepted the benefit of the lease for over 70 years and cannot rescind what is past. Thus *Count Six* (para. 74-75), alleging the failure of the Presbytery, composed of representatives of the various Presbyterian churches in the area, to approve the negotiations for the 1902 lease or even the 1940 amendment, is barred by the passage of time and estopped by prior decisions of this court.

The same criteria would apply to plaintiff's allegations of initial mutual mistakes of fact *to void*[5a] the 1902 lease agreement. The most diligent counsel cannot take a deposition of Henry Oliver at this late date and even excluding the problems of the parole evidence rule (Feldman, Pennsylvania Trial Guide 95, et seq.) as it applies to written agreements, a prayer to void an instrument 70 years after its inception establishes laches on the face of the complaint: Gabster v. Mesaros, 422 Pa. 116, 220 A. 2d 639 (1966).

While plaintiff disputes the binding legal effect of Price Act petitions under the Act of June 20, 1935, P.L. 353,[6] 10 P.S. §81, which authorized lay control of church property, the court does not need to consider these petitions and decrees to find laches on the face of the complaint.

In the analogous case of Gabster v. Mesaros, supra, where plaintiffs delayed 30 years to chal-

---

5a. The court is distinguishing between interpreting the 1902 lease (Count Two) and nullifying the document (Counts One, Five and Six). In addition, the court is not ruling at this time on the issues of evidence raised by Count Two.

6. The court is not ruling at this time whether the Act of June 20, 1935, supra, nullified subsequent Price Act petitions.

lenge the ownership and use of church property, it was held that plaintiff delayed for a grossly unreasonable period of time in asserting its claim.

The court stated, in the opinion, at 422 Pa. 120:

"It is self-evident that the defendants and other members of the Church will suffer material prejudice in asserting and defending their rights, and also suffer material injury if the plaintiffs claim is sustained.

"Whether or not the subject Church was founded and dedicated as one in union with Rome is one of the vital questions in issue. As a result of the plaintiff's knowing acquiescence for thirty years, without taking action, in the existence of conditions about which they now complain, the original purpose of the Church has become obscure, the testimony of important witnesses no longer available, and the ascertainment of the true facts rendered much more difficult, if not impossible.": 422 Pa. 116 at page 120.

The delay in time is even more detrimental in the instant proceedings. Buildings have been erected in reliance on the long-term character of the lease between the parties. Subleases and sales have occurred. To *void* for errors of 71 years standing would not render equity but would create chaos.

In addition to alleged mutual mistakes in the negotiation of the 1902 lease, plaintiff also avers the "unconscionable" character of the 1940 amendment to void not only the amendment but the lease itself (Count Four).

While the 1940 petition to approve the amendment does not bar plaintiff from subsequent argument that the terms of the 1902 lease have been modified by agreement of the parties (Remaley v. Peoples Natural Gas, 307 Pa. 237, 161 Atl. 320

(1932)), plaintiff cannot assert in one proceeding the desirability and benefit of an amendment and in a second proceeding allege that that amendment is "unconscionable.": Baily v. Baily, 44 Pa. 274 (1863); Reese v. Adamson, 276 Pa. 253, 119 Atl. 920 (1923); Appeal of Third Reformed Dutch Church, 88 Pa. 503 (1879).

Further, the allegations, set forth by plaintiff in Count Four, if proven do not establish an "unconscionable" lease. The court will not, and cannot, rewrite contracts for parties, even if they have made a bad bargain, without clear allegations of ambiguity or fraud: Trans Fuel, Inc. v. Saylor, 440 Pa. 51, 269 A. 2d 718 (1970).

The standard form lease used in Pennsylvania for many years gave numerous options to the landlord without similar rights to the tenant and leases have been upheld where the renewal option is limited to one party or another: Vales, Landlord and Tenant, §84; Borough of Phoenixville, 184 Pa. 615, 39 Atl. 490 (1898); Trans Fuel, Inc. v. Saylor, supra.

In essence, in Count Four of the complaint, plaintiff first petitioned the court for approval of the "unconscionable" amendment to the 1902 lease, delayed 33 years to request rescission of the amended lease and has failed to plead sufficient facts to establish an "unconscionable" agreement.

However, the bar of laches is dependent upon the point in time when plaintiff's cause of action accrued.

As argued by plaintiff at page 32 of its brief, the issue is also whether defendant's conduct *since* January 1, 1973 in *reducing* the rent and refusing to negotiate an increase in the ground rent constitutes conduct entitling plaintiff to relief either under the terms of the original lease (Count Two) or the subsequent amendments (Count Three).

The $30,000 rental set forth in the 1902 lease ceased in 1940. By various modifications to the 1902 lease the yearly rent has ranged from $15,000 to $45,000 per annum in the 33-year period. The rehabilitation by defendant in January, 1973, of the initial $30,000 annual rental in a period of rising prices precipitated the instant litigation.

Thus, while laches will bar plaintiff under Counts One, Four, Five and Six, Counts Two and Three did not mature until defendant refused to make rental adjustments in January, 1973.

### The Modifications

To sustain preliminary objections in the nature of a demurrer, it must appear with certainty that, upon the facts averred, the law will not permit recovery by plaintiff. Where any doubt exists as to whether or not the preliminary objections should be sustained, that doubt should be resolved by refusing to sustain the objections: Schott v. Westinghouse Electric Corporation, 436 Pa. 279, 259 A. 2d 443 (1969); Birl v. Philadelphia Electric Company, 402 Pa. 297, 167 A. 2d 472 (1960).

Plaintiff's six counts divide into two separate categories for relief, i.e., *first*, that the lease be declared null and void as against public policy or due to the 1940 amendment or for want of approval by the Presbytery at the time of inception or under the Pennsylvania Constitution, and, *second*, that the instrument be reformed or modified to reflect the intent and conduct of the parties. It is the opinion of the court that the demurrer must be dismissed as to this second category of relief.

As in the law of contracts generally, parties to a lease retain the right to modify the terms of their agreement. Thus, a lease may be modified by parole or a portion may be waived or the landlord, by his

conduct, may be estopped to enforce a particular provision of the lease agreement: United States v. Ravitz, 93 F. Supp. 913 (E. D. Pa. 1950); Remaley v. Peoples Natural Gas, 307 Pa. 237, 161 Atl. 320 (1932). This modification may be shown by writing or by words or by conduct or by all three: Levicoff v. Rubin, 413 Pa. 134, 196 A. 2d 359 (1964); Consolidated Tile and Slate Co. v. Fox, 410 Pa. 336, 189 A. 2d 228 (1963); Muchow v. Schaffner, 180 Pa. Superior Ct. 413, 119 A. 2d 568 (1956). And the parties to a contract may, in fact, rescind the initial agreement by making a new agreement inconsistent to the initial terms: Muchow v. Schaffner, supra. Moreover, the agreement to rescind or modify need not be by express words but may be inferred from the attendant circumstances and conduct of the parties.

In Priester v. Milleman, 161 Pa. Superior Ct. 507, 55 A. 2d 540 (1947), the court reversed a judgment for defendant on a directed verdict, and stated at 161 Pa. Superior Ct. 516:

"The parties to a written contract may always show that it was subsequently abandoned in whole or in part, modified, changed or a new one substituted, and this may be established by an express parol agreement or actions necessarily involving the alterations. Achenbach v. Stoddard, 253 Pa. 338, 98 A. 604. *The agreement to modify need not be expressed in words; it may be inferred from acts and declarations of the parties inconsistent with the original contract.* Weldon and Kelly Co. v. Pavia Co., 354 Pa. 75, 46 A. 2d 466." (Emphasis supplied.)

Plaintiff's Counts Two and Three in effect request modification of the lease to correspond to the behavior of the parties.

Pursuant to the allegations within the complaint, plaintiff has set forth facts, which, if believed, show conduct beginning in 1940 to modify the fixed rental in the lease to reflect "changing economic conditions" or even adjustments to the lease based upon the rental moneys received by defendant from the subtenant. Plaintiff has also alleged other changes within the agreement. While the burden falls upon plaintiff at time of trial to establish these alleged modifications and their effect upon the 1902 lease, it cannot be said that plaintiff has failed to state a cause of action.

## *The Demurrer*

Because of the nature of the dispute in the instant proceeding, plaintiff's cause of action is based on a number of legal theories and alternate relief is sought in that plaintiff seeks either to void the 1902 lease or to have the court modify or cancel some of its provisions.

However, it is plaintiff's position that the court must either sustain the demurrer in its entirety and dismiss the complaint or deny the demurrer. In other words, it is plaintiff's position that if any of plaintiff's six counts states a cause of action the demurrer must be denied: Snyder v. Monroe, 27 D. & C. 2d 32 (Adams County, 1960).

This position would be correct if the complaint requested a single form of relief, but, in fact, plaintiff had requested alternate relief based upon alternate theories of law. An analogy may be made to those cases where under our modern Rules of Civil Procedure, a party is claiming relief both in assumpsit and trespass.

Where it appears to the court that plaintiff's alleged facts cannot support a specific count of the

complaint, it can only consume the time and energy of court and counsel to continue to litigate a "dead" issue.

In the recent case of Banda, Inc. v. Va. Manor Apartments, Inc., 451 Pa. 408, 303 A. 2d 925 (1973), an equity action, the chancellor sustained defendant's preliminary objections with respect to counsel fees, punitive damages and that portion of the complaint which sought to impose a constructive trust upon real estate involved in the action. The appeal from the partial sustaining of the demurrer was quashed and the Supreme Court stated as follows (303 A. 2d at 926):

"This appeal must be quashed. As we said in Stadler v. Mt. Oliver Borough, 373 Pa. 316, 95 A. 2d 776 (1953): '. . . unless a special right to appeal is expressly given by statute, an appeal will lie only from a *definitive* order, decree, or judgment which finally determines the action . . . The court cannot assume such appellate jurisdiction even by consent of the parties . . .' " (Emphasis supplied.)

The mere sustaining of preliminary objections to a complaint is not an appealable order and remains interlocutory until an order is entered dismissing the complaint: Cherry v. Empire Mutual Insurance Company, 417 Pa. 7, 208 A. 2d 470 (1965).

If plaintiff's position were adopted, the courts would be flooded with far-fetched theories of recovery without power in the trial court to limit litigation to those aspects of a complaint where a cause of action has been stated.

In the instant proceeding, it is the opinion of the court, based upon the carefully researched briefs of both parties, that plaintiff has not stated a cause of action, as a matter of law, to support the nullification of the 1902 lease. It is the belief of the court that

plaintiff has stated a cause of action on Counts Two and Three of the complaint. Therefore, the demurrer will be partially sustained and partially denied.

### Rules of Civil Procedure

As careful and prudent lawyers, both counsel have filed numerous technical objections to preserve the record in this proceeding. Defendant has moved to strike numerous paragraphs of plaintiff's complaint as containing impertinent or scandalous matter, as unduly prolix and has requested a more specific pleading. Conversely, plaintiff has filed preliminary objections to defendant's preliminary objections. In ruling on the major issues in dispute, it is the opinion of the court that these "technical" objections of both parties have been resolved by the court's ruling on defendant's demurrer.

The court agrees with defendant that the complaint is "prolix," and includes conclusions of law and legal argument. However, it is well established that repetitious, inconsequential or evidentiary material in a pleading may be treated as harmless surplussage. It cannot be said that the complaint is so prolix in the instant proceeding that defendant cannot prepare an appropriate reply: Goodrich-Amram, §1019(a-10).[7]

Defendant has further alleged that Northwestern Mutual Life Insurance Company, the owner of the structure on the leased land, is a necessary party to

---

7. While plaintiffs have alleged the inequity of the $30,000 ground rental, the complaint, as stated, does not include specific averments to establish the land's current value. However, this is an evidentiary issue to be resolved at trial.

this action. Unquestionably, Northwestern has a vital interest in the ultimate decision in these proceedings. However, if Northwestern wishes to participate in this action, its remedy is to intervene under the provisions of Pa.R.C.P. 2327.

## SUMMARY

Based upon the foregoing opinion, defendant's preliminary objections in the nature of a demurrer to Counts One, Four, Five and Six of the complaint are sustained. All other objections are denied.

## ORDER

And now, October 25, 1974, upon preliminary objections of defendant to plaintiff's complaint in equity and plaintiff's preliminary objections to defendant's preliminary objections and after briefs and arguments of counsel, it is hereby ordered, adjudged and decreed as follows:

1. Defendant's preliminary objections in the nature of a demurrer is sustained as to Counts One, Four, Five and Six of the complaint, as stated.

2. The remaining counts of defendant's preliminary objections are denied.

3. Defendant is granted 20 days to file an answer to Counts Two and Three of plaintiff's complaint.

4. It is further ordered that absent additional preliminary motions, this case shall be scheduled for trial on January 8, 1975, and a pretrial conference, pursuant to Local Rule 212 and including pretrial statements, is hereby set for December 12, 1974 at 3:30 p.m.