**FORMS, INC.**

v.

**AMERICAN STANDARD, INC.**

**Civ. A. No. 81–4933.**

United States District Court,
E. D. Pennsylvania.

Aug. 23, 1982.

Jay Barsky, Sharlyn Cohen, Philadelphia, Pa., for plaintiff.

Steven L. Friedman and Daniel F. Ryan, III, Philadelphia, Pa., for defendant.

MEMORANDUM

NEWCOMER, District Judge.

Before me are cross-motions for summary judgment. Plaintiff Forms, Inc. ("Forms") by its owner Laurence Weiss, has brought this action alleging in four counts fraudulent misrepresentation in the sale of Forms to Weiss by the defendant American Standard, Inc. ("American Standard"). In Count I ("Inventory Revaluation Claim"), the plaintiff alleges that the defendant fraudulently failed to disclose the post-closing adjustment of Forms' inventory. Plaintiff in Count II ("Computer Documents Claim") alleges that the American Standard fraudulently misstated in the post-closing adjustment the nature and amount of an outstanding claim by a company called Computer Documents against Forms. In Count III plaintiff alleges that the defendant fraudulently misrepresented to Weiss that all accounts receivable on the closing balance sheet were collectible in full ("Account Receivable Claim"). Forms alleges in Count IV ("David Kercher Claim") that it was fraudulently induced to exempt David Kercher, the General Manager of Forms when it was owned by American Standard, from the employment restriction clause of the agreement of sale ("Agreement"). The defendant seeks summary judgment on all four courts; plaintiff seeks summary judgment on counts II and IV. For the reasons set forth below, I will grant the defendant's motion for summary judgment on the first four substantive counts, as well as Count V (Breach of Contract) and Count VI (Punitive Damages), and enter judgment for the defendant.

I. *The Facts*

The record in this case is somewhat complicated and it deserves an extended recitation. The undisputed facts, drawn from the opposing briefs and the depositions, are as follows.

Laurence Weiss, C.P.A., learned in the summer of 1979 that American Standard was interested in selling the assets of an unincorporated division in its Business Forms Group, known as Forms Inc. Weiss entered into negotiations that continued throughout the summer and fall with James Sears, Vice President of Corporate Development for American Standard, and James Sinclair, then President of American Standard's Business Forms Group. Weiss offered to purchase Forms for book value plus $500,000 on December 3, 1979 (Exhibit "D", Defendant's Motion for Summary Judgment). Three weeks later, on December 26, 1979, Weiss made a second offer of book value plus $600,000 and American Standard agreed to negotiate solely with Weiss (Exhibit "E", Defendant's Motion for Summary Judgment). Eight draft agreements were made between January 1980 and March 12, 1980, the date the final agreement was executed.

On November 12, 1979 James Sinclair wrote a letter to David Kercher in which Sinclair promised that Kercher would remain with Forms until it was sold, and further provided that should Kercher leave Forms at the sale, American Standard would keep him on the payroll for up to one year or such earlier time as Kercher was able to locate employment elsewhere (Exhibit "C", Plaintiff's Motion for Summary Judgment). Kercher, in a letter dated January 14, 1980, sought similar assurances from Gerald Tonges, who had replaced Sinclair as President of the Business Forms Group (Exhibit "D", Plaintiff's Motion for Summary Judgment). Two days later Tonges confirmed the offer in a letter to Kercher (Exhibit "E", Plaintiff's Motion for Summary Judgment). Laurence Weiss sent a letter to Kercher on February 7, 1980 outlining Kercher's compensation package should he remain with Forms (Exhibit "G", Defendant's Motion for Summary Judgment). This was followed by a conversation in which Weiss offered a higher base salary (Deposition of Weiss April 19, 1982, at 111). Kercher did not tell Weiss what he planned to do after the settlement. Sometime in mid-February Weiss called Kercher and asked permission to speak with a particular Forms salesman. Kercher thought this improper and refused, but Weiss contacted the salesman anyway (Deposition of Kercher, at 155–157A). On February 19, 1980 a side letter to the Agreement was drafted by American Standard exempting Kercher from the employment restriction that prohibited American Standard from offering employment to any Forms employees at or above their salary for one year after the settlement (paragraph 10(a)(ii) of the Agreement). The side letter appeared in several drafts and was signed by Weiss at the closing on March 12, 1980 (Exhibit "N", Defendant's Motion for Summary Judgment).

The sale of Forms to Laurence Weiss was consummated on March 12, 1980. There is conflicting evidence about who informed whom of the Computer Documents claim. Charles Gordon, counsel for American Standard, said that he was informed by Weiss (Deposition of Gordon, at 57–58). Weiss recalls being informed at the closing by Gordon or by an unnamed third person (Deposition of Weiss, April 30, 1982 at 62–63). A side letter written by Weiss and executed as part of the Agreement stated that American Standard informed Forms of the claim (Exhibit "V", Plaintiff's Response to Defendant's Motion for Summary Judgment). The account executive who handled the claim for Forms, Thomas Reeve, stated that he discussed the claim several times with Kercher and told him that it was in excess of $31,000. (Affidavit of Reeve, Plaintiff's Response to Defendant's Motion for Summary Judgment). Kercher recalls discussing the dollar amount of the claim with Gordon before the closing but did not mention the figure in his deposition (Deposition of Kercher, at 134). Kercher stated, in a February 25, 1980 memorandum to James Sears that he believed the potential liability to be approximately $25,000.00 (Exhibit "P", Plaintiff's Motion for Summary Judgment). Gordon also recalled that amount as the figure discussed in his conversation with Kercher (Deposition of Gordon, at 57–58). Gordon next spoke to

Kercher about the Computer Documents claim on the closing date. Gordon stated that Weiss mentioned the figure of $22,205 and that he then called Kercher to corroborate the figure (Deposition of Gordon at 57–58). American Standard agreed to assume liability for claims up to $22,205 in a side letter that became part 1 of the agreement (Exhibit "J", Defendant's Motion for Summary Judgment).[1]

On the afternoon of the settlement Kercher sent a letter of resignation to Weiss, stating his intention to remain with Forms until at least April 30th (Exhibit "F", Plaintiff's Motion for Summary Judgment). Kercher's decision to leave Forms was apparently based on his belief, grounded in his experience with Mr. Weiss in the weeks before the closing, that he could not work effectively with Weiss (Deposition of Kercher, at 157–158). Later the same day Kercher sent a letter to Gerald Tonges of the Business Forms Group of American Standard informing Tonges of his resignation and invoking American Standard's one-year employment commitment (Exhibit "G", Plaintiff's Motion for Summary Judgment). Kercher did not tell Weiss before the closing that he planned to stay with Forms (Deposition of Weiss, April 19, 1982, at 115), nor was Kercher offered a specific position with American Standard (Deposition of Kercher, at 154), nor did Kercher reveal to anyone at American Standard his intention to leave Forms (Deposition of Kercher, at 68–72). The next day, March 13, American Standard transferred Kercher to its Business Forms Group with the proposed status of Assistant General Manager, retroactively effective as of March 10, 1980 (Exhibit "J", Plaintiff's Motion for Summary Judgment).

Several times after the closing, Kercher discussed a transfer to another division of American Standard with Gerald Tonges, and from April 2–8 Kercher travelled to Dallas, Texas to inspect a facility newly acquired by American Standard (Deposition of Kercher at 88–89). Because Kercher was frequently absent or late for work, he was fired by Weiss on April 11th, with an effective date of April 2nd. (Deposition of Weiss, at 143–146; Exhibit "H", Plaintiff's Motion for Summary Judgment). In mid-April Kercher was offered and accepted a job as President and General Manager of American Standard's Woehrmyer Business Forms in Denver, Colorado. He assumed his new position in late April (Deposition of Kercher, at 87–97).

Weiss and American Standard provided in the Agreement that their respective accountants would meet within 60 days of the closing to negotiate any post-closing adjustments. (Agreement, Paragraph 4(d), Exhibit "L", Defendant's Motion for Summary Judgment). The provision also included a procedure in which any unresolved disputes between the accounting firms would be submitted to a third independent accounting firm whose decision would be binding. On July 27, 1980 Forms' accountants (Coopers and Lybrand) submitted a list of post-closing adjustments to American Standard's accountants (Arthur Young) (Exhibit "P", Defendant's Motion for Summary Judgment). The accountants met on July 21, 1980 and resolved some disagreements, but left unresolved Forms' claims for inventory revaluation, additional credits on the Computer Documents account, and compensation for uncollectable accounts receivable (Counts I, II, and III of this suit). On February 4, 1981 Jay Barsky, attorney for Forms, wrote a letter to Charles Gordon, attorney for American Standard, in which he characterized the claims as part of the post-closing adjustment but suggested that the matter be resolved by the lawyers (Exhibit "R", Defendant's Motion for Summary Judgment). The issues were not resolved and Forms filed this suit on December 2, 1981.

## II. *Procedural Posture*

Plaintiff Forms states four counts of fraudulent misrepresentation, a fifth count for breach of contract based on facts alleged in the first four counts, and a sixth count for punitive damages. Forms seeks

---

1. The final claim of $31,902.74, plus a $1,500 letter of credit, was eventually settled as a credit on the Computer Documents account after the sale of Forms to Weiss.

relief of $43,000.00 in Count I (Inventory Revaluation Claim), $11,198.00 in Count II (Computer Documents Claim), $38,979.00 in Count III (Accounts Receivable Claim), $300,000.00 in Count IV (David Kercher Claim), $378,177.00 in Count V (Breach of Contract Claim which incorporates first four counts), and $1,134,531.00 in Count VI (Punitive Damages Claim).

Defendant American Standard has moved for summary judgment on the first four counts. Forms has responded first by alleging that Counts I and III present genuine issues of material fact for which it would be improper to grant summary judgment, and second by filing its own motion for summary judgment on Counts II and IV. Defendant has answered plaintiff's motion for summary judgment, and has realleged his own grounds for summary judgment.

### III. Count I: Inventory Revaluation

Plaintiff alleges that the defendant misrepresented the value of Forms' inventory in violation of the good faith provision of the Uniform Commercial Code, Pa. Stat. Ann. tit. 12 § 1–203 (Purdon 1980), by using an accounting sleight-of-hand in which the plaintiff paid an inflated price for the inventory. Under the Agreement the price Weiss was to pay for the inventory was established by the Forms closing balance sheet for 1979. The closing balance sheet included the 1980 announced price increases, while the prior year's standard cost had been utilized in the interim monthly financial statements. Plaintiff admits that he was put on notice that the closing balance sheet was subject to year-end adjustments, but complains that defendant did not act in good faith because (1) the closing balance sheet used a different standard cost; (2) no explanation was given indicating what method was used to determine the new

standard; (3) the use of the January 1980 announced price increase clouded the meaning of year-end adjustments; and (4) the inconsistent accounting methods required plaintiff to make a good faith effort to disclose them. The effect of the alleged misrepresentation, according to the plaintiff, was to make Weiss pay for inventory valued at a price in effect after the effective date of sale (December 31, 1979). In other words, Forms claims that American Standard made Weiss pay an inflated price for the inventory.

Defendant, in its motion for summary judgment, maintains that there are no triable issues of material fact and that as a matter of law plaintiff has no action on this record. The revaluation of the inventory was provided for in the Agreement and the method used was a generally accepted accounting procedure.[2] Defendant maintains that paragraph 6(e) of the Agreement put plaintiff on notice that the closing balance sheet was not prepared in the same manner as the 1979 unaudited financial statements. The method used was the "standard cost" method of valuing inventories, a generally accepted accounting procedure that revalues the inventory on the basis of the standard cost for the up-coming year. The plaintiff was provided with closing financial statements for the years 1976, 1977, 1978, each of which revealed a similar year-end inventory revaluation (Exhibits "A", "B", "C", Defendant's Motion for Summary Judgment, Deposition of Weiss, April 19, 1982 at 82). Plaintiff was also provided in January 1980 with the December 31, 1979 monthly statement, which included the revaluation (Exhibit "T", Defendant's Motion for Summary Judgment). Defendant maintains that the aggregate effect of these actions by American Standard

---

**2.** Paragraph 6(e) of the Agreement provides in relevant part that

[t]he Closing Balance Sheet was prepared by seller in accordance with generally accepted accounting principles, and except for normal year-end adjustments, in a manner consistent with that employed in the preparation of the unaudited balance sheets of Forms as of August 31, 1979, September 30, 1979, October

31, 1979, and November 30, 1979, copies of which have been previously delivered to Buyer and Seller has delivered to Buyer a letter from Arthur Young & Company [American Standard's accounting firm] to the effect that the closing balance sheet was prepared in conformity with generally accepted accounting principles applied on a basis consistent with that of the preceeding year.

was to put plaintiff on notice that the inventory would be revalued.[3]

Plaintiff at one point characterizes American Standard's alleged failure to fully disclose the method used to revalue the inventory as a violation of the good faith provision of the Uniform Commercial Code. 13 Pa. Cons. Stat. Ann. § 1203 (Purdon 1980). "Good Faith" is elsewhere defined in Article one as "honesty in fact is the conduct or transaction concerned." 13 Pa. Cons. Stat. Ann. § 1201 (Purdon 1980). This good faith provision proscribes a standard of conduct, not a cause of action. This is because good faith like the truth has been torn in thousand pieces, and the law has yet to reassemble them all. *See* J. Milton, *Aereopagitica.* Therefore the law has developed a more humble, but more substantive, standard by which to measure good faith, the tort if misrepresentation.

██ An action for misrepresentation requires the plaintiff to plead and prove (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, (5) damage to the recipient as the proximate result. *Scaife Company v. Rockwell-Standard Corporations*, 446 Pa. 280, 285, 285 A.2d 451, 454 (1972); *Neuman v. Corn Exchange National Bank & Trust Company*, 356 Pa. 442, 450, 51 A.2d 759, 763 (1947). The Parol Evidence Rule does not bar extrinsic evidence to show fraud or misrepresentation. *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402 (3d Cir. 1981); *Shulman v. Continental Bank*, 513 F.Supp. 979, (E.D. Pa. 1981).

██ The issue then is whether plaintiff has submitted any evidence showing fraud or misrepresentation. If not, then the complaint has not stated a cause of action and summary judgment is appropriate. *Hubicki v. ACF Industries*, 484 F.2d 519, 522 (3d Cir. 1973). I conclude that there is no record evidence for misrepresentation or fraud and will therefore grant defendant's motion for summary judgment as to this count. American Standard used a standard accounting procedure that it had used in the past. It made this information available to Weiss several months before the closing. Moreover, the Agreement provided that the closing balance sheet would reflect year-end adjustments which were prepared in a manner "consistent with that of the previous year." (Paragraph 6(e), *see* footnote 2 *supra*). Mr. Weiss was therefore placed on both real and constructive notice that the inventory would be revalued on the basis of the subsequent year's costs. Even if there had been an inconsistency, the fact that plaintiff is dissatisfied with the revaluation does not oblige me to rewrite the contract to ameliorate his mistake. "A misrepresentation as to the subject of a proposed sale will not support an action for deceit if the subject be open to the buyer's observation." *Scaife Company*, 446 Pa. at 287, 285 A.2d 451 (quoting *Emery v. Third Nat'l Bank*, 308 Pa. 504, 162 A. 281 (1932).

IV. *Count II: Computer Documents*

Both plaintiff and defendant seek summary judgment on this count. Forms alleges in its complaint that American Standard knew that the full amount of the Computer Documents claim was $33,403.00 but that it deliberately misrepresented the claim as being only $22,205.00. The plaintiff avers that it relied on American Standard's good faith and it did so because the negotiations on the claim occurred during the hectic closing proceedings.

---

**3.** I note at the outset that plaintiff is correct in arguing that the arbitration clause does not apply to this or any other claim made in this lawsuit. Paragraph 8(a) of the Agreement specifically restricts the arbitration to cash activities and post-closing adjustments for the period from the effective date of sale (December 31, 1979) to the closing date (March 12, 1980). The Inventory Revaluation Claim (Count I) relates to the standard cost measure on the closing balance sheet for 1979. The Computer Documents Claim (Count II) is based on a claim for defective goods shipped prior to the effective date. The Accounts Receivable Claim (Count III) relates to uncollected accounts prior to December 31, 1979. The David Kercher claim (Count IV) does not relate to cash activities but to Kercher's exemption from the employment restriction clause.

Defendant's motion for summary judgment is based on the language in a side letter, executed as part of the Agreement, that limited American Standard's liability for the Computer Document claim for any amount "up to $22,205" (Exhibit "O", Plaintiff's Motion for Summary Judgment). Defendant argues that this wording written by Weiss, anticipated a higher claim and expressly limited defendant's liability. Defendant further argues that plaintiff's allegation of fraud is no more than a bold allegation, unsupported by the facts. Moreover, any reliance on a representation contrary to the Agreement's side letter is unjustifiable as a matter of law. Since the wording of the side letter is clear, there is no issue of material fact and defendant therefore maintains that it is entitled to summary judgment.

In its response and in its own motion for summary judgment, plaintiff admits that the side letter is clear on its face, but seeks to introduce parol evidence to show that American Standard knew the Computer Documents claim would significantly exceed $23,205.00 and that it fraudulently undervalued the figure. Forms alleges that both Kercher and Gordon knew the liability would exceed $31,000.00; Kercher because he was told by Thomas Reeve, who handled the account, and Gordon because Reeve had discussed it with him prior to the closing (Reeve Affidavit, Plaintiff's Response to Defendant's Motion for Summary Judgment; Kercher Deposition, at 134). Kercher also sent a memorandum to Sears on February 25, 1980 informing him that the liability would be approximately $25,000.00 (Exhibit "P", Plaintiff's Motion for Summary Judgment). Forms's allegation that American Standard deliberately suppressed the truth is based first on the putative inconsistent statements of Gordon (who maintains he had no knowledge of the higher figure, Gordon Deposition at 57–60) and those of Reeve and Kercher, and second on American Standard's failure to include the claim on the closing balance sheet, which under the Agreement's paragraph 2(a)(i)

determines who assumes liability. Forms argues that its reliance on the lower figure was justified because American Standard brought up the claim and readily assumed liability, and because the hectic activity of closing precluded an accurate check of the claim.

American Standard argues in response that it is entitled to summary judgment on any one of three grounds. First, Forms violated the Arbitration Clause of the Agreement, which obliges the parties to submit disputed claims to binding arbitration by independent accountants.[4] Second, the Agreement unambiguously limits American Standard's liability to $22,205.00. American Standard points out that its agreement to pay this amount was gratuitous, since it was required to accept liability for goods shipped before December 31, 1979 only when the aggregate claims exceeded $50,000 (Agreement paragraph 13(a)). Third, the misrepresentation claim must fail, because even if a factual misrepresentation did occur, Weiss could not justifiably rely on such a misrepresentation since it was contrary to the plain language of the letter.

■ I have been directed to no record evidence of fraud and will therefore grant defendant's motion for summary judgment. Forms has not met the burden mandated by the Federal Rules of setting forth specific facts showing that there is a genuine issue for trial: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed. R. Civ. P. 56(e). The initial burden of support under the Federal Rules is upon the movant, who must show that the facts which would warrant summary judgment in his favor are indisputable with the opposing party

4. *See* footnote 3 *supra.*

given the benefit of any favorable inferences. *See* 6 Moore's Federal Practice ¶ 56.-15[1] at 56–344. But the burden shifts to the opposing party when the movant presents evidence which would require a directed verdict in his favor at trial. *Cousins v. Yeager,* 394 F.Supp. 595 (E.D.Pa. 1975); 6 Moore's Federal Practice, ¶ 56.-11[3]. "The party resisting a motion for summary judgment may not rest upon the *mere* allegations of his pleading; his response must set forth specific facts showing that a genuine issue for trial exists." *Wire Mesh Products, Inc. v. Wire Belting Association,* 520 F.Supp. 1004, 1005 (E.D. Pa. 1981).

█ Forms has not met the burden of setting forth specific facts showing that there is a genuine issue for trial, so summary judgment is appropriate. The mere assertion that a genuine issue exists, without any showing of evidence, would defeat the whole purpose of summary judgment. The web of facts Forms spins will not support the weight of its allegation. There is nothing in the record to indicate that American Standard knowingly and willfully misrepresented the amount of the Computer Documents claim. Kercher in his deposition said only that he had a conversation with Gordon about the amount of the Computer Document claim, not what the amount was. Kercher's memorandum to Sears is equivocal about the amount of the claim, stating only that "there may be a potential liability claim of approximately $25,000 . . ." (Exhibit "P", Plaintiff's Motion for Summary Judgment). Finally, there is no evidence, parol or otherwise, that Gordon knew the amount was greater than the $23,205 figure agreed upon at the closing. An argument based upon what Gordon may have known or should have known does not meet the threshold scienter requirement for fraudulent misrepresentation.

Again this Court is being asked to rewrite the contract to ameliorate plaintiff's mistake. American Standard agreed at closing to assume liability for up to $22,205 in a letter Mr. Weiss later admitted was poorly drafted (Deposition of Weiss, April 30, 1982 at 70). American Standard was already obliged to assume liability for any claims exceeding $50,000.00. Finally, plaintiff admits to making a mistake of judgment by not requiring further documentation of the Computer Document claim. (Deposition of Weiss, April 30, 1982, at 69–70). This being the case, plaintiff will not now be permitted to use an allegation of fraud to restructure the agreement.

## V. *Count III: Accounts Receivable Claim*

Forms alleges in this count that American Standard fraudulently misrepresented that all accounts receivable on the closing balance sheet were collectible, while knowing that a number of them were in fact bad debts. As a result, plaintiff claims damages of $23,979.00.

Defendant's motion for summary judgment is based on the wording of the Agreement. Weiss requested an absolute warranty of collectibility on accounts receivable during the negotiations, and American Standard repeatedly rejected the request (Exhibit "K", Defendant's Motion for Summary Judgment). The final agreement reflects this position by requiring American Standard to provide a warranty for "all receivables in the closing balance sheet . . . [that] are collectible . . . in the ordinary course of business." (Agreement, paragraph 6(n)). Accounts receivable on the closing balance sheet were $1,392,041.00. Forms failed to collect $23,979.00. This means that Forms collected over 99% of accounts receivable. Defendant maintains that a 99.4% collection rate on accounts receivable comports with the Agreement's terms of collectible "in the ordinary course of business."

On September 11, 1979 American Standard discontinued, retroactive to August 31, 1979, the reserve fund it had maintained to cover bad debts. The customer credit allowances were thereafter charged directly to the profit and loss account as incurred. (Exhibits "F" and "G", Plaintiff's Response to Defendant's Motion for Summary Judgment). Plaintiff's theory is that American Standard's failure to disclose the termination of the bad debt fund, coupled with its

**322**

knowledge that all of the bad debts could not be collected, constitutes a fraudulent misrepresentation designed to induce Weiss to purchase Forms. Plaintiff maintains that these allegations raise genuine issues of material fact that make summary judgment inappropriate.

 Again I am obliged to rule in favor of the defendant and grant its motion for summary judgment. Forms has failed to meet its burden of submitting issues of material fact that would justify a trial. The party opposing summary judgment must set forth in its reply specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Wire Mesh Products, Inc. v. Wire Belting Association,* 520 F.Supp. 1004 (E.D. Pa. 1981). Forms merely alleges fraud, and this is insufficient to overcome a motion for summary judgment. First, American Standard did not misrepresent the warranty of collection when it eliminated the bad debt reserve since it would still have remained liable for whatever was collectible in the ordinary course of business. Moreover, the elimination of the bad debt reserve in August occurred long before American Standard agreed to negotiate solely with Weiss and therefore can in no way be said to have fraudulently induced the sale. Second, the record evidence clearly shows that there was no fraud in the execution of the contract, since an absolute warranty was discussed and rejected in favor of collectibility in the ordinary course of business. (Exhibit "K", Point 27; Exhibit "S", Point 27; Agreement, paragraph 6(h), Defendant's Exhibits in Support of Motion for Summary Judgment).

 The problem, then, is not at bottom one of fraud but of the construction and legal effect of the contract, and this is an issue properly within the purview of the court. *Holmes v. Chartiers Oil Co.,* 138 Pa. 546, 21 A. 231 (1891). "Summary judgment is properly used for interpreting a contract whose terms are considered by opposing parties to be clear and unambiguous, despite the parties' divergent views of what the agreement provided." *Goldinger v. Boron Oil Company,* 375 F.Supp. 400, 413

(W.D. Pa. 1974); *Trans-Fuel Inc. v. Saylor,* 440 Pa. 51, 269 A.2d 718 (1970). Summary judgment for defendant is proper on this count because of the evidence that an absolute warranty of collection was repeatedly rejected during the negotiations by American Standard and because the Agreement explicitly limits the warranty to accounts receivable "in the ordinary course of business."

One final point remains to be considered: whether the percentage of uncollected bad debts falls within the definition of "collectible . . . in the ordinary course of business." This issue would appear to be one of material fact, thus precluding summary judgment for American Standard. However, the party opposing summary judgment, Forms, must do more than rely on contrary and conclusory allegations in a well-pleaded complaint. It must set forth specific facts showing that there is a genuinely disputed factual issue for trial. Fed. R. Civ. P. 56(e); *see Tunnell v. Wiley,* 514 F.2d 971, 976 (1975). Summary Judgment for the movant who has carried his burden of proof is appropriate if the opposing party does not supplement the record. Fed. R. Civ. P. 56(e); *See First National Bank v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Tripoli Co., Inc. v. Wella Corp.,* 425 F.2d 932 (3d Cir. 1970). Summary judgment is granted on this count because Forms failed to direct my attention to any evidence to support its claim that the percentage of uncollected accounts receivable exceeded the industry standard for collectibility in the ordinary course of business.

VI. *Count IV: David Kercher Claim*

Plaintiff claims that it was fraudulently induced to exempt David Kercher, the General Manager of Forms, from the employment restriction clause of the Agreement. Both Forms and American Standard have moved for summary judgment.

Forms alleges that Kercher and American Standard concocted a "sweetheart deal" in which American Standard surreptitiously agreed to retain Kercher after the sale of Forms and then induced an exemption letter from Weiss in order to invoke it after

the closing. Plaintiff contends that American Standard indicated to Weiss that it would offer Kercher a position only if a deal with the new Forms management could not be worked out, and that on the basis of this false representation, Weiss executed the side letter exempting Kercher. In support of its claim plaintiff points to several documents. The first is the letter of November 12, 1979 in which American Standard offered to keep Kercher on the payroll for one year if he chose not to remain with Forms after its sale (Exhibit "C", Plaintiff's Motion for Summary Judgment). Plaintiff maintains that Kercher's level of performance declined markedly from this date. Second, there is the personnel transfer order, which assigned Kercher to the Business Forms Group retroactive to March 10, 1980 (Exhibit "J", Plaintiff's Motion for Summary Judgment). This transfer was written on March 13, 1980, one day after the sale of Forms and the resignation of Kercher. Plaintiff believes that these two events, the one year payroll extension promise and the act retroactively triggering the promise, sufficiently demonstrate that American Standard misrepresented to Weiss that it would not offer an employment contract to Kercher and that by this misrepresentation Weiss was induced to exempt Kercher from the employment restriction. Plaintiff now seeks summary judgment and relief of $300,000.00. The figure is based on damages allegedly caused by Kercher's diminished performance from November 12, 1980 and by the delay caused by the sweetheart deal in hiring a replacement.

American Standard has also moved for summary judgment. It contends that plaintiff has failed to set forth a precise misrepresentation, and it specifically denies plaintiff's two general allegations that it misrepresented to Weiss that it would not offer a position to Kercher or that it offered Kercher a position before the closing. The first allegation is based upon a statement allegedly made by Sears to Weiss in which Sears said "[w]e're not going to take

David Kercher away from Forms. We're not going to offer him employment, but should he come to us, you know, we might—we would be obligated to do something for him." (Deposition of Weiss, April 19, 1982, at 103). Defendant maintains that, assuming this statement was made it misrepresents no statement of fact. The uncontroverted evidence is that American Standard first learned of Kercher's decision to leave Forms on the closing date March 12, and offered him a job a month later, sometime in mid-April.[5] Second, American Standard contends that the one-year transition agreement of November 12, 1979 was a courtesy to a long-time employee and not a job offer. Finally, American Standard argues that given the unequivocal language of the side letter exempting Kercher from the employment restriction, any reliance on a contrary representation would be unjustified as a matter of law. (Exhibit "N", Defendant's Motion for Summary Judgment). Under the explicit terms of the Agreement American Standard was free to negotiate with Kercher at any time. Therefore no misrepresentation occurred and summary judgment must be awarded to the defendant.

▇▇▇▇ I agree with the defendant's argument and will therefore grant its motion for summary judgment on this count. Proof in a fraud action in Pennsylvania law must be "clear, precise, and indubitable." *Kaufman v. Mellon National Bank and Trust Co.*, 366 F.2d 326, 330 (3d Cir. 1966), and must provide evidence satisfying the elements of misrepresentation: a material representation was made that was known to be false, the maker intended the representation to be relied upon to the listener's detriment, there was justifiable reliance, and resulting damages. *Edelson v. Bernstein*, 382 Pa. 392, 115 A.2d 382 (1955); *Girard Bank v. John Hancock Mut. Life Ins. Co.*, 524 F.Supp. 884, 894 (E.D. Pa. 1981). Plaintiff has failed to show that there was a false representation that was known to be

---

5. The precise date is unclear but, given the exemption addendum, is irrelevant for the purpose of this case.

false and was uttered with the intent to induce reliance. No possible construction could be placed upon Mr. Sears's comment to Mr. Weiss to bring it within the ambit of tortious misrepresentation. Moreover the November 12, 1979 letter promising Kercher a one year transition salary must be read as defendant describes it: as an accommodation to a long-time employee. In any case, the promise was made almost a month before Weiss's initial offer and a month and a half before American Standard agreed to negotiate solely with Weiss. Since no false representation was made, I am left with the plain language of the agreement, which unambiguously permitted American Standard to offer Kercher a job. Therefore plaintiff has failed to demonstrate an issue for trial and summary judgment must be granted for defendant. *Goldinger v. Boron Oil Co.*, 375 F.Supp. 400, 413 (1974).

VII. *Counts V & VI: Breach of Contract and Punitive Damages*

Although not specifically mentioned in defendant's motion for summary judgment, I have decided to enter judgment for the defendant on these counts for the reasons cited above in the discussion of the substantive counts. An appropriate order will be entered.