BRIAN A., minor individual, by and through his parent and natural guardian, ARTHUR A.; and Arthur A., individually, Plaintiffs

v.

STROUDSBURG AREA SCHOOL DISTRICT, et al., Defendants

No. 3:CV–99–1383.

United States District Court, M.D. Pennsylvania.

March 26, 2001.

Elizabeth Kapo, Allentown, PA, for plaintiffs.

John E. Freund, III, Allentown, PA, for defendants.

## ORDER

VANASKIE, Chief Judge.

NOW, THIS ____ DAY OF MARCH, 2001, having carefully considered the well-reasoned Report and Recommendation of United States Magistrate Judge Thomas M. Blewitt, in which Magistrate Judge Blewitt concludes that defendants are entitled to judgment in their favor on plaintiffs' claims under 42 U.S.C. §§ 1983 and 1985 concerning the suspension and expulsion of Brian A. from the Stroudsburg High School as a result of Brian's authoring a note that stated: "There's a bomb in this school Bang Bang!!"; and finding that plaintiffs have not filed objections to the February 22, 2000 Report and Recommendation, despite being apprised of the right to do so; and noting that review of the Report and Recommendation may accordingly be limited to ascertaining whether it contains clear error that not only affects substantial rights of the plaintiff but also seriously affects the integrity, fairness or public reputation of judicial proceedings, see Cruz v. Chater, 990 F.Supp. 375, 377 (M.D.Pa.1998); and concluding that there is no such clear error on the face of the record in this case, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation of Magistrate Judge Blewitt (Dkt. Entry 16) is **ADOPTED.**

2. Defendant's Motion for Summary Judgment (Dkt. Entry 9) is **GRANTED IN PART.** Defendants are entitled to judgment in their favor with respect to Counts I through IV of Plaintiffs' Complaint.

3. Exercise of supplemental jurisdiction over the state law claims asserted in Counts V through VII of the Complaint is declined, and Counts V through VII of the Complaint are dismissed, without prejudice.

4. The Clerk of Court is directed to mark this matter **CLOSED.**

5. The Clerk of Court is further directed to cause a copy of this Order to be forwarded to Magistrate Judge Blewitt.

## REPORT AND RECOMMENDATION

BLEWITT, United States Magistrate Judge.

This Civil Rights action was initiated by the minor Plaintiff, Brian A. (Brian), and his father, Arthur A., on August 4, 1999, by the filing of a Complaint pursuant to 42 U.S.C. § 1983. (Doc. 1). The Plaintiffs allege various Constitutional violations arising out of Brian's suspension and later expulsion from the Stroudsburg High School. Presently before the court is the Defendants' Motion for Summary Judgment which was filed on June 15, 2000. (Doc. 9). The motion has been briefed by all parties and is ripe for disposition.

### I. Summary Judgment Standard.

A motion for summary judgment may not be granted unless the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The court may grant a motion for summary judgment if the

pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is " 'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph,* 842 F.2d 689, 693–694 (3d Cir.1988) *(citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.,* 546 F.Supp. 314, 320 (E.D.Pa.1982), *aff'd mem.* 725 F.2d 667 (3d Cir.1983). Upon such a showing, the burden shifts to the nonmoving party. *Id.* The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.,* quoting *Gans v. Mundy,* 762 F.2d 338, 340 (3d Cir.1985), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985);

*Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976) *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

## II. Statement of Material Facts.

Brian A., then fifteen years-old, entered the tenth grade at Stroudsburg High School sometime in March 1999, having relocated from New Jersey to the Stroudsburg area with his family. On or around April 27, 1999, Brian wrote a note that stated "There's a Bomb in this School bang bang!!" [1] and left it on a table in art class. Plaintiffs contend that the note was written as a joke for two girls in Brian's art class and that he forgot to throw it away after class. The note was found by a teacher, who brought it to the attention of Defendant David Reinbold (Reinbold), an Assistant Principal of Stroudsburg High School. On April 28, 1999, Reinbold and Defendant Earnest Lee (Lee), a Lieutenant in charge of the school police, questioned Brian about the note in Reinbold's office. At first, Brian denied having written the note. Reinbold indicated that he had a sample of Brian's writing and that it matched the writing on the note. At one point during the questioning, Reinbold exited the office, leaving Brian alone with Lee.[2] Brian then admitted to Lee that he authored the note and that he was on probation in New Jersey for an incident which involved the blowing up of a shed on school property.[3] Reinbold re-entered the

1. An image of a smiling face was drawn between the words "school" and "bang."

2. Plaintiffs allege in their Complaint that Lee coerced Brian into admitting that he wrote the note. During his deposition testimony, Brian stated that Lee told him that kids sometimes do things that they do no not mean and that he would not "end up getting in as much trouble" if he admitted writing the note. (Brian A. Deposition at 17). Brian also stated that Lee "just kept badgering me about it, and

then I just ended up admitting it." (Brian A. Deposition at 17).

3. According to Plaintiffs, "Brian A. was on probation in New Jersey for taking part with other minor individuals and one adult in an incident involving a shack." (Plaintiffs' Concise Statement of Material Facts, Doc. 15, paragraph 6). According to Arthur A.'s deposition testimony, "... there were five people involved. It happened 2 o'clock in the morning. And they put a bomb in the shed and blew it up.... [Brian] was suspended for five

room, and Brian repeated his confession to him.

Sometime during the meeting with Brian, his father, Arthur A., was called by Reinbold and asked to come to the school. Reinbold and Arthur A. met, and Arthur A. was advised that Brian would be suspended for ten days for making terroristic threats. By letter dated May 3, 1999, Reinbold advised Arthur A. and his wife that Brian was suspended from school for ten days "for the following reason: bomb threat to school." (Doc. 1, Exhibit A.). Also by letter dated May 3, 1999, Brian apologized for the incident and requested that he be permitted to remain in school.

Two or three days after his April 28, 1999, meeting with Reinbold, Arthur A. met with him again at the school. During their fifteen- or twenty-minute meeting, Reinbold refused to accept a book report that Arthur A. attempted to submit on behalf of Brian and informed Arthur A. that Brian would not be receiving credit for the tenth grade. Although the exact dates are unclear from the record and pleading, Arthur A. apparently had a conversation with Defendant McGraw, the then Superintendent of the Stroudsburg Area School District, about the incident involving his son. According to the complaint, McGraw told Arthur A. that Brian had no chance of being educated in Pennsylvania. McGraw also allegedly stated that no charges be brought against Brian if Arthur A. voluntarily withdrew him from school. In a letter dated June 2, 1999, the solicitor for the School District advised Brian's parents that he was recommended for expulsion and that expulsion proceedings would be initiated if he were not voluntarily withdrawn from school. The letter also made mention of the fact that

despite Brian's suspension in New Jersey, at the time of his enrollment at Stroudsburg, Arthur A. signed a sworn statement indicating that Brian had never previously been suspended. (Doc. 13). In a letter dated June 8, 1999, to Plaintiffs' prior counsel, George W. Westervelt, the Solicitor reiterated that if Brian were not voluntarily withdrawn from school, expulsion proceedings would be brought and criminal proceedings would be brought against his parents for making false statements under Section 1304–A of the School Code. (Doc. 13). Brian's parents were notified that an expulsion hearing would be held on June 14, 1999, at 4:00 P.M. in a letter dated June 7, 1999, and received by them on June 9, 1999. On Friday, June 11, 1999, Plaintiffs' counsel called the office of the School District's Solicitor and requested a continuance of the expulsion hearing. The Solicitor returned Plaintiffs' counsel's phone call on Monday morning and indicated that the request for a continuance was denied. The expulsion hearing was held at 4:00 on Monday June 14, 1999, without Brian, his parents, or their counsel in attendance. Arthur A. testified at deposition that he did not attend the hearing because his counsel would not be present. (Arthur A. Deposition at 18). In an Adjudication dated June 29, 1999, Brian was permanently expelled from the Stroudsburg Area High School.

The pleadings are somewhat sparse as to Brian's progress since he was expelled. According to his deposition testimony, however, he finished tenth grade through home schooling and as of the date of his deposition, April 27, 2000, he was enrolled in the eleventh grade at Bethesda, an alternative school. The Defendants allege that the School District paid for the alternative school.[4]

---

days, and then returned back to school..." (Arthur A. Deposition at 9).

4. It also appears from his deposition that Brian was sentenced to one year of probation for the incident at Stroudsburg High School.

## III. Analysis

Seven Counts are stated in the Complaint. Counts I through IV allege violations of federal law, while Counts V through VII raise claims based on Pennsylvania state law. These claims will be addressed *seriatim.* The federal claims will be addressed first.

### A. The Federal Claims

#### i. Jurisdiction

A preliminary matter not raised by the parties must first be addressed, *viz.* whether the court has subject matter jurisdiction over Arthur A.'s claims.[5] The Supreme Court stated in *Valley Forge v. Americans United for Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), that: "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.' The constitutional power of federal courts cannot be defined, and indeed has no substance, without reference to the necessity to adjudicate the legal rights of litigants in actual controversies." 454 U.S. at 471, 102 S.Ct. at 758 (internal quotations omitted). The Court held that this Article III requirement mandates that "...the party who invokes the court's authority [must] show that he personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." 454 U.S. at 472, 102 S.Ct. at 758 (internal quotation omitted). Accordingly, the court lacks subject matter over a claim brought by a litigant who does not have constitutional standing. *See* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 2d section 3531 *et seq.*

"The right to a free public education is a right which belongs to the student and not their parents." *Collins v. Chichester School District,* 1998 WL 351718 *3 (E.D.Pa.1998). "[W]hen a student is suspended or expelled, it is the student who is entitled to due process because it is the student—not [his] parents—who has a right to a free public education." *Jarmon v. Batory,* 1994 WL 313063, * 5 (E.D.Pa.1994)(internal quotation omitted). Accordingly, Arthur A. lacks standing to pursue, on his own behalf, a claim that his son was improperly suspended and later expelled. *Carlino v. Gloucester City High School,* 57 F.Supp.2d 1, 9, n. 4 (D.N.J.1999). Since he has no standing here, the court lacks jurisdiction over the claims of Arthur A. and they should be dismissed.

#### ii. The Merits of the Federal Claims

Count I of the Complaint brings a claim under the Fourteenth Amendment, Count II under the Fifth Amendment, and Count III brings a claim under 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a cause of action against those who, under color of state law, violate the Constitution or laws of the United States. 42 U.S.C. § 1983; Erwin Chemerinsky, *Federal Jurisdiction,* § 8.1, 370 (1989). Accordingly, Section 1983 does not create rights; it serves as a vehicle for the redress of an already established right. Likewise, the Constitutional provisions at issue here do not create a cause of action in and of themselves; their violation is redressed through Section 1983. The Plaintiff's[6] claims under the Fourteenth and Fifth Amendments will,

---

5. The issue of subject matter jurisdiction can, of course, be raised by any party or on the court's motion at any time. *Chemical Leaman Tank Lines v. Aetna Casualty & Surety Co.,* 177 F.3d 210, 220 (3d Cir.1999).

6. Since Arthur A. lacks standing, the Plaintiff, Brian A., will hereinafter be referred to in the singular.

therefore, be analyzed as if brought under Section 1983.

### iii. Due Process

The gravamen of Plaintiff's claim is that he was denied procedural due process prior to his being suspended and later expelled, and that his suspension and expulsion violated substantive due process. The suspension and the expulsion will be addresses separately.

#### 1. Suspension

■ In determining whether Brian's suspension involved a constitutional violation, the court must look to the due process standards set forth in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). In *Goss,* the Supreme Court held that the right to an entitlement to a public education is a property interest which is protected by the Due Process Clause that cannot be taken away "without adherence to the minimal procedures required by that Clause." 419 U.S. at 574, 95 S.Ct. at 736. Having determined that a suspension from school involves a property interest that is temporarily denied, the Court articulated what process is due to a student who faces a suspension of ten days or less. The Court stated that the student "... must be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." 419 U.S. at 581, 95 S.Ct. at 740. The Court went on to say: "[t]here need be no delay between the time 'notice' is given and the time of the hearing. In the great majority of cases the disciplinarian may informally dis-

cuss the alleged misconduct with the student minutes after it has occurred." 419 U.S. at 582, 95 S.Ct. at 740.

■ According to the Plaintiff's own allegations, all the process that was due to him under *Goss* was provided by the school officials. Brian was confronted by Reinbold and Lee about the incident, he was shown the note, and was told that a handwriting sample of his matched the writing on the note. He was given notice of the charges and an opportunity to present his side of the story. Indeed, he admitted authoring the note. He was afforded ample process prior to his being suspended.

There have been numerous cases that have addressed what is required of school officials prior to suspending a student in light of the *Goss* case. These cases do not impose an undue burden on school officials, but rather recognize that *Goss* set forth a standard that is workable in the day-to-day school environment. What is required of school officials is what was provided to Brian—that the student be told of the charges and allowed an opportunity to tell his story prior to being suspended. *See Palmer v. Merluzzi,* 868 F.2d 90 (3rd Cir.1989); *C.B. v. Driscoll,* 82 F.3d 383 (11th Cir.1996); *Carlino v. Gloucester City High School,* 57 F.Supp.2d 1 (D.N.J. 1999); *Collins v. Chichester School District,* 1998 WL 351718 *3 (E.D.Pa.1998); *Jarmon v. Batory,* 1994 WL 313063 (E.D.Pa.1994).

Since the due process requirements were satisfied prior to his suspension, Defendants are entitled to summary judgment on that issue.[7]

---

**7.** Plaintiff asserts that he was denied due process under the Fourteenth Amendment because the Defendants did not follow Pennsylvania statutory procedure prior to expelling him. The rights created by the Pennsylvania State legislature cannot be read into the Four-

teenth Amendment. All the process due to Plaintiff is set forth in *Goss, supra* and its progeny. His Pennsylvania state law claims are separate and distinct from his Federal Constitutional claims and indeed separate

## 2. Expulsion

■ Plaintiff also claims that he was denied due process because he was given improper notice of the expulsion hearing. As noted by the Supreme Court in *Goss*, total exclusion from the educational process would require more process than is due in a suspension of ten days or less. 419 U.S. at 576, 95 S.Ct. at 737. Here, however, the issue is not whether an adequate forum was afforded to the Plaintiff, but rather whether he had adequate notice to attend the hearing.[8] The expulsion hearing was scheduled for Monday, June 14, 1999, at 4:00 P.M. The notice was dated June 7, 1999, and received by Brian's parents on June 9, 1999. Plaintiff's counsel requested a continuance of the hearing on Friday, June 11, 1999. That request was denied on the morning of June 14, 1999. Despite the denial of the request for a continuance, neither Brian, his parents, nor counsel attended the hearing. Brian's father testified at his deposition that he did not attend the hearing because his counsel could not be present. (Arthur A. deposition at 18). The issue then is reduced to whether, given the facts of this summary judgment record, sending a notice that would not be received until June 9th violated due process when the hearing was scheduled for June 14th. In *Jarmon v. Batory*, 1994 WL 313063 (E.D.Pa.1994), the Court held that a notice of an expulsion hearing received by the student and her parents three days before the hearing "satisfie[d] the strictures of due process." *Id.* at *8. In the case at bar, the Plaintiff and his parents had at least five days notice of the hearing. But, moreover, Brian and his father knew of the pending expulsion for weeks since the incident. Plaintiff's Complaint and Arthur A.'s deposition testimony reference conversations between Arthur A. and Defendants Reinbold and McGraw where expulsion was discussed. (Arthur A. deposition at 13–15). Indeed, the Complaint alleges that Superintendent McGraw told Brian's father that Brian "would never in the future have a chance to be educated in Pennsylvania." (Doc. 1 Paragraph 22–23). The letters in the record sent to Brain's parents from the School District solicitor advised that Brian was recommended for expulsion and that proceedings would be brought if he did not voluntarily withdraw from school. It is clear from the record that Brian's father knew of the impending expulsion long before the hearing was scheduled. The Complaint, deposition testimony of Arthur A., and the letters in the record also make clear that Brian and his parents had counsel since the incident. Plaintiff claims that a specialist in school law was sought and that the short notice did not provide new counsel a chance to attend the hearing. (Arthur A. deposition at 18).

The issue, however, is not whether a specialist in educational law could be obtained, or whether the time of the hearing was convenient, but whether the Defendants provided adequate process in connection with the expulsion hearing. In *Palmer v. Merluzzi*, 868 F.2d 90 (3rd Cir. 1989) the Court addressed the issue of Due Process in the school context. The Court opined that: "Due process is a flexible concept and the process due in any situation is to be determined by weighing (1) the private interest at stake, (2) the gov-

Counts in the Complaint bring action based on state law claims.

**8.** Plaintiff's parents were advised that an expulsion hearing was scheduled, that they had the right to be present with Brian, that he could testify, be represented by counsel, compel the attendance of school personnel, and present evidence and cross examine witnesses.

ernmental interest at stake, and (3) the fairness and reliability of the existing procedures and the probable value, if any, of additional procedural safeguards." *Id.* at 95. Here, there is no doubt that Brian's interest in an education is exceedingly important. Similarly, the governmental interest in maintaining an orderly and safe school environment is critical. As to the third factor, it appears from all the facts that the process was fair under all the circumstances and Brian was afforded adequate process. As discussed, Brian and his father were aware of the looming expulsion. The issues in the matter are not at all complex factually, and a full hearing was provided. Although five days notice appears short, under the circumstances, it cannot be said that it constituted a violation of due process. *See, Jarmon, supra,* (three days notice is adequate). Moreover, Pennsylvania law provides a procedure for review of local agency actions. These "additional procedural safeguards" must be considered in determining whether due process was afforded to the Plaintiff. *See* 2 Pa.C.S.A. Section 701 *et seq.*

Since the evidence of record, including the allegations made in the Complaint and the deposition testimony of Plaintiff's father, establishes that due process was not violated in scheduling and holding the expulsion hearing, the Defendants are entitled to summary judgment on this issue.

■■■ Plaintiff also claims that expelling him from school was a violation of his substantive due process rights. Substantive Due Process with regard to a student's right to an education has been recently explained by the Court of Appeals for the Sixth Circuit in the case of *Seal v. Morgan,* 229 F.3d 567 (6th Cir.2000). There, the Court stated:

The Due Process Clause provides heightened protection against governmental interference with certain fundamental rights and liberty interests. Government actions that burden the exercise of those fundamental rights or liberty interests are subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling state interest. The list of fundamental rights and liberty interests— which includes the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to terminate one's pregnancy, and possibly the right to refuse lifesaving medical treatment, however, is short and the Supreme Court has expressed little interest in expanding it...In fact, the Supreme Court has held explicitly that the right to attend public school is not a fundamental right for the purpose of due process analysis... Government actions that do not affect fundamental rights or liberty interests and do not involve a suspect classification will be upheld if they are rationally related to a legitimate state interest... In the context of school discipline, a substantive due process claim will succeed only in the 'rare case' when there is 'no rational relationship between the punishment and the offense'.

*Id.* at 574–575 (internal quotations and citations omitted). Here, there is clearly a rational relationship between the punishment of expulsion and the offense of writing a note alerting the reader to the fact that there is a bomb in the school. The school certainly has an interest in maintaining the safety of the students and the orderly operation of the educational environment. Brian's note caused an evacuation of the school building which disrupted the education of all of his schoolmates. An extensive commentary on the current epidemic of school violence in the United States, or the fact that this incident took

place only weeks after the tragedy that occurred at Columbine High School in Colorado, is not necessary. It is sufficient to say that the rational basis test has been satisfied and there has been no violation of substantive due process in this instance.

■ The Plaintiff's final Fourteenth Amendment argument is that the school handbook for the year at issue does not refer to terroristic threats, nor that disciplinary measures would be taken to address them. He further complains that the School District's policy against terroristic threats was adopted just prior to the adjudication of expulsion. This argument is frivolous on its face. The 1998–1999 Student Handbook requires students to: "Conform to reasonable standards of socially acceptable behavior. Respect the rights, person and property of others. Preserve the degree of order necessary to the educational program in which they are engaged." (Doc. ¶ 25). The Handbook also warns students that illegal or unlawful conduct at school could result in suspension and/or expulsion. (Doc. 7, ¶ 25).

These provisions certainly would put a student on notice that writing a note containing a bomb threat is a serious violation of school policy. The Supreme Court has held in *Bethel School District v. Fraser,* 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986) that "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures..." 478 U.S. at 686, 106 S.Ct. at 3166 (*quoting New Jersey v. T.L.O.,* 469 U.S. 325, 340, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)). The Court also recognized that "[g]iven the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive to the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." *Id.* Brian had sufficient notice that

alleging that there was a bomb in the school was a serious offense. He admitted as much when he told Defendant Lee that did not want to get in more trouble since the incident in New Jersey. Accordingly, this Due Process claim should fail as well.

*iv. Fifth Amendment Claim*

■ Plaintiff's next constitutional challenge is an alleged violation of his Fifth Amendment rights. The Complaint states that the "Defendants' actions in coercing a confession from Brian A. without having first ensured the presence of his parent and/or attorney and without first Mirandizing him deprived him of his right to be free from compelled self-incrimination..." (Doc. 1, ¶ 42). However, "[u]nder the federal constitution, students facing disciplinary action in public schools are not entitled to *Miranda* warnings." *Jarmon v. Batory,* 1994 WL 313063, *11 (E.D.Pa.1994). *See also In re D.E.M. v. Commonwealth,* 1999 Pa.Super. 59, 727 A.2d 570 (1999). Accordingly, Plaintiff fails to state a claim for a violation of the Fifth Amendment.

*v. Section 1985*

■ Plaintiff's final federal claim, brought in Count IV of the Complaint, alleges a conspiracy to violate civil rights redressable under 42 U.S.C. § 1985. The Court of Appeals for the Third Circuit summarized the requirements necessary to state a claim under Section 1985(3) in *Lake v. Arnold,* 112 F.3d 682 (3rd Cir.1997). The Court stated that "a plaintiff must allege (1) a conspiracy; (2) motivated by racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Id.* at 685. The

*Lake* decision makes clear that in order to state a claim under Section 1985(3), the plaintiff must allege membership in a protected class. Accordingly, the "reach of section 1985(3) is limited to private conspiracies predicated on racial, or perhaps otherwise class-based invidious animus." *Id.* at 685 (internal quotation omitted). The Plaintiff here makes no allegation that he is a member of a protected class, and thus his claim under Section 1985(3) must fail as a matter of law.

## B. *The State Law Claims*

■ As discussed above, the Defendants' motion for summary judgment should be granted as to all the federal claims raised in the Complaint. There then remain three state law claims brought in Counts V, VI, and VII of the Complaint. "Courts should ordinarily decline to exercise jurisdiction over state law claims when federal claims are dismissed." *Collins v. Chichester School District,* 1998 WL 351718, *7 (E.D.Pa.1998). The Supreme Court stated in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) that: "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. . . . Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." 383 U.S. at 726, 86 S.Ct. at 1139. Accordingly, it is recommended that the state law claims be dismissed without prejudice.

## IV. Recommendation.

Based on the foregoing, it is respectfully recommended that Defendants' Motion for Summary Judgment (Doc. 9) be granted as to the federal claims contained in Counts One through Four and that the state law claims contained in Counts Five through Seven be dismissed without prejudice.

February, 2001.